EUGENE HOLT v. THE STATE.

No. 7085.  Decided November 21, 1922.

Rehearing March 14, 1923.

1.—Murder—Bill of Exceptions—Filing—Practice on Appeal.

Where the bill of exceptions was filed too late and after the statutory time, and the extension thereof had expired, the same cannot be considered on appeal.

2.—Same—Evidence—Questions—Practice in Trial Court.

Where the record on appeal failed to show any testimony sustaining the proposition that the homicide was caused by or grew out of a charge that defendant interfered with the work in hand or persons laboring on said building, there was no error in sustaining an objection to a question whether the defendant interfered with the work or anyone, under the facts in the instant case.

3.—Same—Evidence—Bill of Exceptions—Practice on Appeal.

Where a bill of exceptions is difficult to understand by this Court, and we cannot appraise the materiality of the statement made at said prior difficulty, nor can we understand just what legitimate weight such a statement made at the time of said previous difficulty could have had in determining the guilt or innocence of defendant on the instant trial, we must hold that there was no reversible error in refusing to permit defendant to testify thereto.

4.—Same—Sufficency of Evidence.

Where, upon trial of murder, and a conviction of such offense, the evidence was sufficient to sustain the same, there was no reversible error.

5.—Same—Rehearng—Hearsay Evidence—No Threat.

Upon trial of murder, there was no error in excluding testimony by a defense witness, that another person told him that deceased had said to

said other person that as soon as the old s— of a b— referring to defendant, paid him his first thousand dollars, he was going to kick him off of the job; it appearing in evidence that as soon as defendant paid deceased said thousand dollars he was immediately discharged by deceased long prior to this homicide and that such remark could not have been in the nature of a threat.

Appeal from the Crim. District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Vinson, Elkins & Woods,* and *Mathis, Heidingsfelder, Teauge & Kahn* for appellant.—Cited cases in opinion.

*R. G. Storey,* Asst. Atty. Gen. and *E. T. Branch,* District Attorney.

LATTIMORE, JUDGE.—Appellant was convicted in the Criminal District Court of Harris County of murder, and his punishment fixed at five years in the penitentiary.

We are informed by the facts that appellant was the owner of a certain lot in Houston upon which deceased had contracted to erect a house. It was agreed that at the end of fifteen days work by deceased in the erection of said house he should be paid by appellant the first thousand dollars due upon said contract. It was also in evidence that deceased agreed to employ appellant to work upon said building. After appellant had paid said thousand dollars it is undisputed that he was discharged by deceased. The facts tend to show that about the time the house was completed the two men met upon the third floor of an office building in Houston and that almost immediately upon their meeting the homicide occurred. The State's theory was that appellant waited in and around said building and went up in the elevator with deceased, and that deceased went out of the elevator first and that as soon as the two men were fairly outside of said elevator appellant drew his pistol and shot deceased. The State also contended that appellant had threatened on more than one occasion after his discharge that he would kill deceased or do him serious bodily injury. Appellant's theory was that deceased had discharged him without cause and was the aggressor in the fatal difficulty, and that as soon as the two men got out of the elevator deceased struck appellant with his fist and grappled with him and made a motion as though to draw a pistol and that appellant believing his life was in danger drew his own weapon and fired the fatal shot. The issues of law seem to have been so satisfactorily submitted by the trial court that no exception appears to the charge.

There are four bills of exception in the record. By bill No. 1 complaint is made that the witness Black was not permitted to testify to a threat that one Rogers had told witness that he, Rogers, had heard deceased make against appellant and which threat Black offered to testify that he had repeated to appellant before the fatal difficulty. This testimony was hearsay pure and simple. There being a controversy as to who began the fatal difficulty, a threat made by deceased against appellant could have been given in evidence by any witness who had heard deceased make same, and this whether same was communicated or not. No authority known to us has gone to the extent of saying that in a case dependent upon the theory of self defense a witness may state that he heard another party state that he heard deceased make a threat against the accused. The rejection of said evidence presents no error.

Appellant's second bill of exceptions can not be considered because filed too late. The trial term of the court below ended on November 5, 1921. The statute allows thirty days from such adjournment in which to file bills of exception. On December 5, 1921, the last day of said statutory allowance of time, the trial court by order duly entered granted thirty days additional time from that date for the filing of bills of exception. This last extension of time expired January 4, 1922. The bill under consideration was filed January 9, 1922. It was filed too late.

Bill of exceptions No. 3 sets out the refusal to allow witness Harris to answer the following question: "During the time you were there did Mr. Holt (appellant) interfere with the work or with anyone?" It is stated that if the witness had been permitted to answer this question he would have said that he worked on the house and that at no time did appellant interfere with the work of any person laboring on the building. We have carefully examined the record and fail to find any testimony sustaining the propostion that the homicide was caused by or grew out of a charge that appellant interfered with the work or persons laboring on said building. There is testimony that deceased refused to allow appellant to work on said house after the first thousand dollars of the contract price was paid, but the State no where seems to assert that the discharge of appellant was for good cause, or to justify same upon the ground that appellant was interfering with the work or the laborers on the building. The State put witnesses on the stand who testified to threats made by appellant and that he complained of the quality of the lumber being used, but we see no reason for concluding that this would justify the introduction of evidence to rebut an issue not made by the State or raised by the evidence. A statement by deceased that appellant had been "bothering him" would not be met or overcome by proof that in the opinion of the witness appellant had not been bothering workmen on the building.

We find bill of exceptions No. 4 difficult to understand. It concludes with a statement that the State objected to defendant giving testimony as to where his family had been, which he would have testified to if permitted, an objection to which was sustained and appellant excepted. The body of said bill of exceptions indicates that appellant wished to testify while a witness to what he told deceased at the time of a difficulty previous to that in which the killing occurred, as to where his family had been, and that he was not allowed so to state. We find both in the bill of exceptions and in the statement of facts that appellant testified that on the occasion in question he told deceased where his family had been. We do not quite appraise the materiality of the statement made at said prior difficulty, nor are we able to understand just what legitimate weight such a statement made at the time of said previous difficulty could have had in determining the guilt or innocence of appellant on this trial. If the court had in fact refused to permit appellant to testify that at the time of said previous difficulty he told the deceased that his family had been in the insane asylum, we are unable to understand how this could have been the exclusion of material testimony. However we are not led to believe that the court did exclude said testimony because of the statement in the bill of exceptions and in the statement of facts as above stated. We are not able to agree that the facts in evidence did not warrant the conclusion of guilt arrived at by the jury. However unjustifiable or wrong might have been the discharge of appellant by deceased, if the facts in testimony by the State witnesses are true appellant was at the building where the killing occurred a considerable time before deceased appeared, and rode up and down the elevator, apparently waiting or looking for some one, a number of times before deceased came. When the latter arrived the two men rode together to the third floor, and the elevator man testified that deceased went out of the elevator first and that immediately after appellant stepped out he drew a pistol and fired the shot which caused the death of deceased.

Finding no error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

March 14, 1923.

HAWKINS, JUDGE.—In upholding the ruling of the trial court in excluding the proffered testimony of the witness Black communicating to the appellant the information of a threat made by the deceased to one Rogers, we fell into error. According to the testimony offered, the deceased made a threat against the appellant to

Rogers. Rogers told Black and Black told the appellent. It is true that this was hearsay, but it apparently came within an exception to the rule excluding hearsay testimony. Mr. Wharton, in his work on Criminal Evidence, uses this language:

"Whenever it is material to ascertain the condition of a party's mind at a particular time, statements made to him which account for his attitude are not excluded because they are hearsay. Thus, threats by A towards B are hearsay when repeated by a third party; yet when B is on trial for an injury done to A, as he alleges in self-defense, it is admissible for him to prove that these threats were communicated to him by such third party. So, a belief in the community that A is a man of great ferocity is admissible in the same issue on B's behalf. When the state of a party's mind is at issue, those communications made to him which may account for his conduct are admissible, though hearsay." (Wharton's Crim. Ev., Vol. 1, Sec. 257.)

The purpose of threats in homicide cases is two-fold. First, to show the design of the deceased to do violence to his slayer. When the circumstances render the threats relevant for this purpose, it is not necessary that they be communicated to the accused. Wigmore on Evidence, Vol. 1, Sec. 110; Branch's Ann. Tex. Penal Code, Sec. 2079. When not communicated, doubtless, the proof of the threat should come from one who heard it uttered by the deceased. Communicated threats, however, illustrate not only the design of the deceased but the state of the mind of the accused relating to his apprehension of danger from the deceased. Wigmore on Evidence, Vol. 1, Sec. 247. In dealing with communicated threats, the inquiry is not whether the threats were uttered but whether the accused was informed that they had been made. Branch's Ann. Tex. P. C., Sec. 2085. It is conceived that when he received this information, he may prove it on the trial though it did not come immediately from the person in whose presence the threats were made. This was the holding of this court in the opinion written by Judge Ramsey in the case of Morgan v. State, 54 Texas Crim. Rep., 546. One may act upon reasonable appearances of danger. Penal Code, Art. 1109. And it is from his standpoint at the time that the matter must be judged. Brumley v. State, 21 Texas Crim. Rep., 240.

"If the accused had reasonable grounds for believing, and did believe, that the deceased was a dangerous man, the source of his information or belief is altogether immaterial." (Childers v. State, 30 Texas Crim. Rep., 194.)

We believe this correctly states the principle upon which the evidence of communicated threats is received and that in applying it to the instant case, the testimony that the appellant had been told by Black that the deceased had made threats against him to Rogers should not have been excluded, but that the jury should have been permitted to determine therefrom and from other evidence before

them the state of the appellant's mind at the time he killed the deceased.

The motion for rehearing should be granted, the affirmance set aside, and the cause reversed and remanded. Such is the order.

*Reversed and remanded.*

ON REHEARING.

March 14, 1923.

HAWKINS, JUDGE.—The State has filed a motion for rehearing in which the correctness of the propositions of law announced in our opinion granting a rehearing to appellant and reversing the case is not questioned. But the matter is presented in a new light and from an entirely different angle. The State asserts that the statements proposed to be proved by Black involved no threat against appellant upon which self-defense could be predicated, but related to a matter which had already transpired before the homicide; that it involved no threat to do violence to appellant at some future time against the execution of which he would have a right to protect himself, but when fairly construed meant only that deceased had said when appellant made the payment of the first thousand dollars he intended to discharge him from the "job"; the payment had been made, and deceased had done just what he said he would do, viz: discharged appellant long before the homicide occurred. If the State is right in its contention, then the law announced in reversing the judgment while correct was improperly applied.

It was proposed to prove by one Black that Rogers told him (Black) that deceased had said to Rogers, "As soon as that old S—of a b—(referring to appellant) pays me his first thousand dollars, I am going to kick him off of the job", and that Black communicated to appellant what Rogers had told Black. The bill of exceptions itself shows that "deceased had contracted to build a house for defendant; and that defendant was to work on said house as a carpenter; and that the defendant was to pay $1000 in fifteen days after the construction of said building had started; that the building was started on or about June 1, 1921; that immediately after the fifteen days defendant *paid* the deceased one thousand dollars, and was *immediately discharged* by the deceased." The bill also shows that there was testimony on the part of the State and appellant showing or tending to show that deceased had made many remarks with reference to "running or kicking him (appellant) off the job." This spoken intention to "kick him off the job" or discharge him, made before he was "kicked off" or discharged became executed when the discharge actually occurred. Fairly construed the language did not involve a "threat" to do physical

violence to appellant. There was no effort being made by deceased at the time of the homicide to "kick" appellant "off the job"; that had been consummated long before. Thus explained the remark proposed to be proven by Black is not a "threat," and after appellant was in fact discharged from the "job" would not form a basis for a charge on threats in connection with self-defense. Black would not have testified to any threat to kill or hurt appellant, but it was proposed to prove by him the communication of a hearsay statement that deceased had said he intended to do just what he did do, that is to discharge appellant at a certain time. This was not disputed but was an admitted fact. Appellant himself testified:

"Mr. Thacker told me that it was best for me to get off the job; if I was not there. he would get along faster, or something to that effect. Before I got off the job and before I paid the $1000.00 I heard something that Mr. Thacker said he was going to do when I paid the money, a man by the name of Black was building the chimney, and he told me that Thacker said when I paid that $1000.00 I was not going to be on the job or on the ground any more. Mr. Black told me that."

It will be seen from appellant's own version of what Black told him what he (appellant) understood deceased to have meant. We gather from the statement of facts that Mr. Rogers, the party to whom deceased is supposed to have made the statement, was present in court, but was not called as a witness.

Our original affirmance correctly disposed of the case. From a misapprehension of the effect of the language which is claimed to have been a "threat," we fell into error in a wrong application of a correct proposition of law in later reversing the judgment. The order granting appellant a rehearing and a reversal is set aside, and the State's motion for rehearing is granted and a re-affirmance of the judgment is ordered.

*Affirmed.*