**Ervin Jerome DICKEY, Appellant,**

v.

**The STATE of Texas.**

**No. 1947–98.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 15, 1999.

---

Roland B. Moore, III, Houston, for appellant.

Keli Pool Roper, Assist. DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

KEASLER, J., delivered the opinion of the Court, in which McCORMICK, P.J., MEYERS, MANSFIELD, KELLER, and HOLLAND, J.J., joined.

Ervin Dickey's defense at trial was that he was attacked by multiple assailants. The trial court did not charge the jury on this defense. Today we must decide whether the trial court's failure to give Dickey's requested instruction on multiple assailants was harmless error. We conclude that it was.

### Facts

In response to a page from Zerick Marvis, Dickey and Carlton Brown went to Marvis's apartment. After answering the door, Marvis went back inside the apartment and returned wearing a bullet proof vest. When Marvis came back outside, the three men began arguing. Marvis claimed Brown owed him money. Dickey heard Marvis cock the hammer of a gun. Dickey claimed in his confession that he thought Marvis and Brown were "about to turn on" him:

> They started looking at each other and I felt they were about to turn on me. [Marvis] had a pistol in his pants pocket and he had his hand on the gun. I heard him cock the hammer back. [Brown] started to go for his gun that he had in his front waist band. I thought they were going to team up on me so I pulled my Glock .40 from my waist and fired at [Brown]. After that [Marvis]

started shooting at [Brown] who was on the ground. I was surprised because I expected him to shoot at me.

Marvis then pointed his gun at Dickey and pulled the trigger, but the gun did not fire. After Marvis and Dickey struggled over Dickey's gun, Dickey got away. The physical evidence revealed that Brown was shot a total of ten times with two different weapons.

## Trial Court's Instruction

The trial court instructed the jury on the law of self-defense. In the application paragraph, the charge specified that if the jury found that it reasonably appeared to Dickey that he was in danger "from the words or conduct or both of Carlton Brown," then it should acquit Dickey on the grounds of self-defense. Dickey's requested multiple assailants charge said that the jury should acquit if it found that it reasonably appeared to Dickey that he was in danger "from the words or conduct or both of [Brown] *or other persons with him.*" The trial court refused to give that instruction.

The jury convicted Dickey of murder and sentenced him to 60 years in prison.

## Court of Appeals

The Court of Appeals reversed the conviction, holding that the trial court erred in failing to give the multiple assailants charge and that Dickey was harmed.[1] We granted the State's petition for discretionary review only on ground two: whether Dickey was harmed by the denial of this instruction.

## Analysis

■ Since Dickey objected to the lack of the instruction at trial, he is entitled to a reversal if he can show some harm.[2] It is Dickey's burden to prove that he suffered some actual, rather than merely theoretical, harm from the error.[3] Nevertheless, the presence of any harm, regardless of degree, is sufficient to require a reversal of the conviction.[4]

The Court of Appeals concluded that Dickey suffered some harm because the charge, though "extensive and quite detailed, ... was based on Brown being the only assailant. It did not cover the situation that allegedly occurred here, namely, that [Dickey] believed Brown and Marvis were going to attack him, Marvis reached for his gun, and [Dickey] shot Brown."[5] Under the Court of Appeals' reasoning, every single case of multiple assailants in which the trial court failed to give the proper instruction would result in harm. We disagree that the mere fact that the charge did not cover the situation in which Marvis was the attacker is enough to constitute harm to Dickey.

■ The evidence in this case was less than clear. According to Dickey, he was afraid that Marvis and Brown were teaming up on him. But there is absolutely nothing in the actions of either Marvis or Brown which would indicate their collusion. Indeed, Dickey admits that he is the one that brought Brown to Marvis's home, and that Marvis was angry that Brown owed him money. Dickey states that Brown and Marvis were looking at each other, not at him. Since the only defensive evidence was Dickey's statement, there is no explanation as to why Dickey would think the other two were teaming up on him. Further, there were no witnesses to the offense to confirm Dickey's fear. This is not a case in which the

1. *Dickey v. State*, 979 S.W.2d 825 (Tex.App.— Houston [14th Dist.] 1998).

2. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984) (op. on reh'g).

3. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim.App.1986).

4. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim.App.1994), *citing Arline, supra.*

5. *Dickey v. State*, 979 S.W.2d at 828.

evidence was clear that there were multiple assailants and the jury was unable to give effect to that evidence. Rather, the evidence reflects that Dickey and Marvis were teaming up on Brown.

Given the ambiguity of the evidence, we conclude that Dickey has failed to meet his burden of proving he suffered some actual harm by the trial court's failure to give the multiple assailants charge.

### Judgment

We reverse the decision of the court of appeals and affirm the trial court's judgment.

KELLER, J., delivered a concurring opinion, in which MANSFIELD and HOLLAND, J.J., joined. WOMACK, J., delivered a dissenting opinion. JOHNSON, J., delivered a dissenting opinion, in which PRICE, J., joined.

KELLER, J., delivered a concurring opinion in which MANSFIELD and HOLLAND, JJ., joined.

The theory behind the multiple assailants charge is that, when it is clear that an attack is being conducted by multiple people as a group, a defendant is justified in using force against any member of the group, even if the recipient of that force is not engaging in conduct that would, by itself, justify the use of force (or deadly force as the case may be). For example, if a defendant were trapped in a house with several hostile individuals, some of whom were brandishing firearms and threatening the defendant, the defendant may be justified in using deadly force against a different person who was blocking an exit that would otherwise be a viable path of retreat. The use of deadly force against the person blocking the exit would be justified, even though that person possessed no firearms and made no threatening moves, because of that person's complicity with those who threatened the defendant's life.

The rule concerning multiple assailants is essentially an application of the law of parties to the defendant's assailants.

In this case, however, if appellant's testimony is believed, Brown committed an act that, *by itself,* justified the use of deadly force—he reached for his gun. And Brown's action of reaching for his weapon was essential to establish that Brown was part of a group assault against appellant. So, under this record, for the jury to have believed that Brown and Marvis were about to conduct a group assault against appellant, the jury must also have believed that Brown was preparing personally to assault appellant. The latter theory was contained in the jury charge, and the jury's rejection of that theory necessarily shows that the jury would also have rejected a multiple assailants theory.

With these comments, I join the majority opinion.

WOMACK, J., filed a dissenting opinion.

I agree with Judge Johnson's opinion, *post,* that the court of appeals erred in failing to analyze this case as *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Cr.App. 1984), requires. What concerns me more is that this court conspicuously commits the same error.

I also want to record my disagreement with the Court's statement, *ante* at 493, that it is the appellant's burden to prove that he suffered harm. Chief Justice Traynor pointed out that the notion of burdens is largely meaningless in the harmless-error context.[1] The parties have only to suggest how the error was, or was not, harmful. The appellate court then assesses the likelihood of harm and applies the appropriate standard of harmless error.[2]

As an initial matter, we note that we deliberately phrase the issue in this case in terms of a judge's grave doubt, in-

**1.** Roger J. Traynor, The Riddle of Harmless Error 25–26 (1970).

**2.** Wayne R. LaFave & Jerold H. Israel, Criminal Procedure 1165 (2d ed.1992).

stead of in terms of "burden of proof." The case before us does not involve a judge who shifts a "burden" to help control the presentation of evidence at a trial, but rather involves a judge who applies a legal standard (harmlessness) to a record that the presentation of evidence is no longer likely to affect. In such a case, we think it conceptually clearer for the judge to ask directly, "Do I, the judge, think that the error substantially influenced the jury's decision?" than for the judge to try to put the same question in terms of proof burdens (*e. g.*, "Do I believe the party has borne its burden of showing ...?"). As Chief Justice Traynor said:

> "Whether or not counsel are helpful, it is still the responsibility of the ... court, once it concludes there was error, to determine whether the error affected the judgment. It must do so without benefit of such aids as presumptions or allocated burdens of proof that expedite fact-finding at the trial." R. Traynor, *The Riddle of Harmless Error* 26 (1970).

*O'Neal v. McAninch,* 513 U.S. 432, 436–37, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

JOHNSON J., delivered a dissenting opinion in which PRICE, J., joined.

I respectfully dissent.

Appellant was convicted of murder and sentenced by a jury to sixty-years confinement in the Texas Department of Criminal Justice—Institutional Division. The court of appeals reversed the conviction, finding that appellant was entitled to an instruction on the right to defend against multiple assailants and that the lack of such instruction constituted some harm to appel-

lant. *Dickey v. State,* 979 S.W.2d 825 (Tex.App.—Houston (14th Dist.) 1998, pet. granted). We granted the state's petition for discretionary review to consider whether "the court of appeals erred in holding appellant was harmed by the trial court's failure to give a multiple assailants charge."[1]

In *Almanza,* we held, *inter alia,* that the actual degree of harm "must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[2] *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim. App.1984). While the court of appeals found that the trial court erred in refusing to instruct the jury on his right to defend himself against multiple assailants and further concluded that the error was harmful, nowhere in its opinion did the court of appeals discuss or apply the factors we have held are to be considered in assessing the degree of harm. *Dickey,* 979 S.W.2d at 828; *see also Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Rather, the court of appeals concluded:

> The State argues the error was harmless because an instruction on self-defense was included in the charge. We disagree. While the trial court's instruction on self-defense was extensive and quite detailed, it was based on Brown being the only assailant. It did not cover the situation that allegedly occurred here, namely, that appellant believed Brown and Marvis were going to attack him, Marvis reached for his gun, and appellant shot Brown. This is

1. In its petition for discretionary review, the state presented two grounds for review. The list of granted petitions for April 7, 1999, indicated we had granted the state's petition for discretionary review in total. However, an examination of the relevant paperwork indicates that we granted only ground two.

2. We found in *Almanza* that these factors apply regardless of whether or not the ac-

cused preserved error. *Almanza,* 686 S.W.2d at 171. We held that if the error in the charge was the subject of a timely objection, as it was in the instant case, then reversal is required if the error constitutes "some harm." *Id.* We also held that in the absence of a proper trial objection to error in the charge, the accused will obtain reversal only if the error constitutes "egregious harm." *Id.*

precisely the situation covered in a multiple assailants instruction. Thus, we find the error constitutes some harm to appellant. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

*Dickey,* 979 S.W.2d at 828.

We faced a similar situation in *Bailey v. State,* where the court of appeals cited *Almanza,* but did not discuss or apply the factors mandated therein. *Bailey v. State,* 867 S.W.2d 42, 43 (Tex.Crim.App.1993). As we found there, and as I believe we should find in the instant case, that because the charge error "must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole," the court of appeals erred in failing to consider and apply these factors required by *Almanza. See Almanza,* 686 S.W.2d at 171; *see also Bailey,* 867 S.W.2d at 43.

Assuming, *arguendo,* that this Court is authorized to perform a harm analysis in these circumstances, the majority has failed to do so, saying only that "[g]iven the ambiguity of the evidence, we conclude that Dickey has failed to meet his burden of proving that he suffered some actual harm...." *Ante,* at 493. A proper *Almanza* analysis would show that appellant was indeed harmed and is entitled to a new trial.

Because appellant properly preserved error in the charge with regard to the absence of a multiple-assailant instruction, a reversal is mandated if appellant shows "some harm." *Almanza,* 686 S.W.2d at 171. We have interpreted this to mean that *any* harm, regardless of degree, is sufficient to require reversal. *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App. 1986). In determining whether there was "some harm," the actual degree of harm must be determined by balancing (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the

argument of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza,* 686 S.W.2d at 171.

Although the jury charge did not contain a multiple-assailants charge, it did include a self-defense instruction. As the court of appeals noted, while the self-defense instruction was extensive and detailed, it was based upon Brown being the only assailant. *Dickey,* 979 S.W.2d at 828. Evidence was presented, however, that revealed that appellant believed that Brown and Marvis were both going to attack him. As properly noted by the court of appeals, the instruction did not cover this situation. The majority seems to fear that under such reasoning "every single case of multiple assailants in which the trial court failed to give the proper instruction would result in harm." *Ante,* at 493. This may be true in the extremely rare cases, such as this one, that warrant a multiple-assailants instruction *and* where the instruction is not given, and may also be the correct and just result.

The second *Almanza* factor requires a review of the evidence, including a determination of whether the jury charge error related to a contested issue. In his confession, appellant stated:

They (Brown and Marvis) started looking at each other and I felt they were about to turn on me. [Marvis] had a pistol in his pants pocket and he had his hand on the gun. I heard him cock the hammer back. [Brown] started to go for his gun that he had in his front waist band. I thought they were going to team up on me so I pulled my Glock .40 from my waist and fired at [Brown]. After that [Marvis] started shooting at [Brown] who was on the ground. I was surprised because I expected him to shoot me. [Marvis] had a colt .38 revolver. After [Marvis] shot so many times he turned the gun on me and pointed it at my head. He pulled the

trigger but it just clicked. We both started fighting over the Glock.

Appellant's written confession constituted some evidence that he believed he was confronting two attackers. While the confession need not be corroborated in order to be sufficient evidence to mandate a multiple-assailant instruction,[3] additional evidence was introduced in front of the jury that did corroborate portions of the confession. For example, consistent with appellant's confession that Marvis "pulled the trigger but it just clicked," other evidence was introduced that the .38 revolver used by Marvis had misfired. A Houston police sergeant assigned to the homicide division testified that he found a Rome .38 Special at the scene, in the parking lot, which was "recovered with five fired casings in it and one misfired case." Later in his testimony, the officer reiterated that "there were five fired casings and one appeared to have been fired but did not discharge." Another police officer also testified in front of the jury that there was a round that "didn't go off." Thus, the existence of a misfired round from the gun used by Marvis, which corroborated a portion of appellant's confession, was repeatedly presented to the jury.

Appellant admits that he is the one who brought Brown to Marvis' home and that Marvis was angry that Brown owed him money. *Ante*, at 493. The majority assumes that this indicates the lack of collusion between Brown and Marvis, and therefore negates the multiple-assailant defense. *Id.* Even accepting the majority's assumption, the requested jury instruction was related to the contested issue of multiple assailants, an issue which the jury was entitled to evaluate.

The third factor in the *Almanza* analysis is the jury argument. This factor weighs heavily in favor of appellant. During closing arguments, the prosecutor made several references to the multiple-assailants theory:

> [Appellant] says, I felt they were about [to] turn on me. Zerick (sic) (Marvis) had a pistol in his pocket, and he had his hand on the gun, I heard him cock the hammer back. Now, if you were afraid of something——then he (appellant) says, about Carlton Brown, he started to go for his gun that he had in his waistband. Doesn't tell you what he did to go for that gun. You know, based on the pictures, that he was dressed in an oversized shirt, and that gun was inside. He did something that looked like he was going for a gun. Now, if you're scared of both of these people, who are you gonna shoot, the one that looks like he's maybe gonna go for a gun, or the one you already know has got the gun in his hand with the hammer cocked back.

Thus, the state argued against inclusion of the multiple-assailant instruction, yet presented this very argument for the jury's consideration. The jury was given this information, suggesting that it should make the credibility determination; yet, by virtue of the lack of the appropriate instruction, the jury was then not given the opportunity to do so.

The state continued its argument:

> What makes more sense if you want to believe what he's telling you is that was the signal to open fire. I thought they were gonna team up on me, so I fired at Carlton. That doesn't make any sense at all. . . . .
>
> * * *
>
> How does that make sense? And even if you believe—— and *we're going to believe everything he said.* I want——are we just gonna believe everything he said?

The state again acknowledged appellant's belief that he thought Brown and Marvis were going to "team up on" him. The state even urged the jury to believe everything in appellant's confession, but then to

---

**3.** In determining whether the evidence raises the issue of a defensive issue charge, all the evidence must be considered, regardless of

"whether it is strong, weak, unimpeached or contradicted." *Booth v. State*, 679 S.W.2d 498, 500 (Tex.Crim.App.1984).

conclude that it made no sense. However, if the jury did believe appellant's confession, it could believe that it was appellant's belief that both Brown and Marvis were going to attack him. Whether or not that makes sense is a question for the jury, as the state itself seems to suggest. Yet, again, the jury was prevented from making such credibility determinations by the lack of a multiple-assailant instruction.

Thus, in its closing argument, the state repeatedly presented the issue of multiple-assailants to the jury. But even after the state, in its closing argument, suggested that the jury could believe each and every word of appellant's confession, the jury was not allowed to render a decision based upon the multiple-assailants defense. Such omission weighs heavily in favor of appellant.

The fourth factor in the *Almanza* harm analysis, other relevant information revealed by the record, has been included in the analysis of the first three factors. I have found no other material, relevant information that should be included.

Based upon the above application of *Almanza*, I believe that, had a proper *Almanza* harm analysis been performed, the court of appeals would have reached the same result: appellant suffered some harm in being denied a multiple-assailants instruction and would be entitled to a new trial.

Consistent with a unanimous Court in *Bailey*, I believe that the judgment of the court of appeals in the instant case should be vacated and this cause remanded to the court of appeals to conduct a proper harm analysis pursuant to our opinion in *Almanza*. *Bailey*, 867 S.W.2d at 43. As an alternate disposition, I would hold, after a proper *Almanza* analysis, that the judgment of the court of appeals should be affirmed. Therefore, I respectfully dissent.