Affirmed and Majority and Dissenting Opinions filed August 8, 2002









Affirmed and Majority and Dissenting Opinions filed
August 8, 2002.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-00-00609-CR

____________

 

BILLY EUGENE COLLIER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On
Appeal from the 248th District Court

Harris County, Texas

Trial
Court Cause No. 818,702

 



 

M A J O R I T Y   O P I
N I O N

Appellant, Billy Eugene Collier, was charged by indictment
with the offense of aggravated assault, enhanced by a prior felony
conviction.  A jury found appellant
guilty of the charged offense.  The jury
assessed punishment at, and the trial court sentenced appellant to, eighteen
years confinement in the Institutional Division of the Texas Department of
Criminal Justice and an eight thousand dollar fine.








In six points of error, appellant appeals his
conviction.  Specifically, appellant
asserts the trial court erred (1) by refusing to hold a Batson hearing;
(2) by refusing to allow defense witnesses Brady Anderson, William Simon, and
Renee Cooper to testify regarding threats made to appellant by the complaining
witness Calvin Washington; (3) by refusing to allow appellant to testify
regarding the threats made to him by Rodney Williams; (4) and by refusing
appellant’s request for a jury instruction on self-defense against multiple
assailants.  We affirm.

FACTUAL BACKGROUND 

Calvin Washington, the complainant, testified that his
girlfriend, Kendra Williams (“Kendra”), arrived home very upset.  She told him she was at a friend’s house when
appellant pushed her and pointed a gun in her face.  After learning of the incident, Washington
got on his motorcycle and located appellant on a nearby street.  Kendra and Washington’s friend, Rodney
Williams (“Rodney”), followed Washington in Rodney’s car.

Washington testified he and appellant discussed the incident
and seemed to resolve their difference. 
After Washington returned to his motorcycle and his two companions
returned to Rodney’s car, appellant approached Washington and pointed a gun in
his face.  Appellant pulled the trigger,
but the gun misfired.  As Washington
backed up, appellant fired a second shot, which struck Washington in his
side.  Once the gunfire started, Rodney
left in his car.  Kendra, however, joined
Washington.  Appellant fired a third
shot, which grazed Washington’s arm. 
When appellant=s gun jammed again, Washington and Kendra escaped on Washington=s motorcycle.  As they fled, appellant chased them on foot
and fired his gun several times. 
Washington subsequently underwent surgery to repair damage to his
intestines and stomach.

Appellant argued he was acting in self-defense.  He testified that, when Washington was
pulling up, a “dude named Pete” gave a gun to Brady Anderson, and Anderson then
slid it into appellant’s pocket. 
According to appellant, Washington said he was “going to kick my ass . .
. just straight up going to wop me.” 
Rodney and Kendra were standing behind Washington, and Rodney had his
hands in his pants.  Appellant testified
he was in fear of his life because Washington and Rodney told him what they
were “fixing to do” to him.








When Washington started reaching for his gun, appellant
pulled out the gun Anderson had given him and fired a warning shot.  According to appellant, Washington then
threatened appellant and his grandmother, who had just run outside.  Washington, however, did not pull his gun out
completely, because other persons had arrived with guns.  After more arguing, Washington told appellant
he would have to shoot appellant and his grandmother.  When Washington reached as if to draw his
gun, appellant shot Washington in the arm. 
As Washington continued to approach appellant, appellant shot Washington
again.

Three additional witnesses testified for the defense.  Brady Anderson testified he saw Washington
approach appellant with his hands behind his back and say, “I got your back,” a
statement Anderson interpreted to mean, “You got a pistol.”  Anderson testified both Washington and Rodney
threatened appellant.  William Simon
testified he saw Washington jump from his motorcycle, charge appellant, and
threaten him.  Renee Cooper, mother of
appellant’s child, testified she heard Washington make two threats to
appellant.

Anderson, Simon, and Cooper did not see the shooting, but
only heard the shots.  None of the three
saw a gun in Washington=s hand.  Washington
testified he did not possess a gun during the incident and did not pretend to
have a gun.  Rodney corroborated the
former; Kendra, the latter.

DISCUSSION

Appellant’s Challenge under Batson v. Kentucky, 476 U.S. 79, 89,
106 S. Ct. 1712 (1986)

In point of error one, appellant contends the trial court
erred in overruling his Batson motion on the ground it was
untimely.  After the trial court
dismissed the venire, but before the selected jurors were sworn, the following
transpired:

[Defense Counsel]: We have a motion before the Court
impanels the jury.

THE COURT: Well, let me tell you this.  The Court finds that you waived it by not
making the motion timely.  Because the
[C]ourt discharged the balance of the panel.

[Defense Counsel]: May we make our objection.

THE COURT: I thought you just did.

[Defense Counsel]: For purposes of the record we would
point out that all the blacks [sic] venire persons were struck by the State and
that all black venire persons that were people who numerically made the jury
pool.  We would request that the Court
hold a Batson hearing pursuant to Article 35.261.

THE COURT: Let the record reflect that the Court sent
the jury back to the jury room.  The
Court - - that I think the jury took some time to visit with them about their
obligations and their payment, and I got no request for a Batson hearing.  I discharged the jury and then a Batson
request was made.  The Court is of the
opinion that the defendant has waived his Batson hearing.

 

The State concedes, and we agree, appellant’s Batson
motion, made before the jury was impaneled, was timely.  Tex.
Code Crim. P. Ann. art. 35.261(a) (Vernon 1989); see Hill v. State,
827 S.W.2d 860, 864B65 (Tex. Crim. App. 1992) (holding Batson objection
timely when made after peremptory strike list had been delivered and stricken
venire members excused, but before jury was sworn).








To be entitled to a Batson hearing, however, appellant
was required to present a prima facie case of purposeful racial
discrimination by the State in the exercise of its peremptory strikes.  See Cantu v. State, 842 S.W.2d 667,
688 n.15 (Tex. Crim. App. 1992).  “[A] prima
facie case is ‘that minimum quantity of evidence necessary to support a
rational inference that the allegation of purposeful discrimination is true.’”  Held v. State, 948 S.W.2d 45, 48 (Tex.
App.CHouston [14th Dist.] 1997, pet. ref’d)
(quoting Harris v. State, 827 S.W.2d 949, 955 n.4 (Tex. Crim. App.
1992)).  The “minimum quantum of evidence
necessary to support a rational inference” is “any relevant evidence with more
than a modicum of probative value.”  Linscomb
v. State, 829 S.W.2d 164, 166 (Tex. Crim. App. 1992).  To make such a prima facie case, a
defendant must show relevant circumstances raise an inference the State made a
race‑based strike.  Flores v.
State, 33 S.W.3d 907, 925 (Tex. App.CHouston [14th Dist.] 2000, pet. ref’d).  Relevant circumstances may include the
existence of a pattern of strikes against a particular class of persons or the
nature of questions propounded and statements made by the litigant who struck
the venire member.  See Edmonson v.
Leesville Concrete Co., 500 U.S. 614, 631, 111 S. Ct. 2077, 2088‑89
(1991); Batson, 476 U.S. at 97, 106 S. Ct. at 1723.  The burden of establishing a prima facie
case “is not onerous; only minimal evidence is needed to support a rational
inference.”  Flores, 33 S.W.2d at
925.

Nevertheless, appellant has not brought forth a record
sufficient to show a prima facie case that would have entitled him to a Batson
hearing.  Appellant’s counsel complained
only that the State struck “all black[] venire persons that were people who
numerically made the jury pool.” 
Striking all members of a particular race, standing alone, however, does
not necessarily raise an inference of purposeful discrimination.  See Held, 948 S.W.2d at 49B51 (holding Caucasian who challenged
State’s striking of “100 percent” of African-American jurors did not establish prima
facie case when 100 percent comprised a single African-American juror and
race was completely unrelated to case); see also Smith v. State, 734
S.W.2d 694, 697 (Tex. App.CHouston [1st Dist.] 1987, no pet.) (stating appellant
presented no prima facie case when he presented no facts or relevant
circumstances other than State=s having struck six African-American venirepersons), vacated
on other grounds, Nos. 832‑87, 833B87, 834B87 (Tex. Crim. App., November 16,
1988, unpublished).

In the present case, appellant made no record of how many
African-American jurors the State struck or who these jurors were.  We therefore have no way of knowing whether
or how the African-American jurors responded to questions during voir dire.








We do know the State struck at least two jurors who responded
affirmatively when asked whether anyone had even been accused of, convicted of,
or charged with, any criminal offense other than a traffic violation.  We also know the State struck another juror
who was on misdemeanor deferred adjudication. 
Finally, we know the State struck at least two jurors who questioned the
limitations on the use of deadly force in self-defense.  We do not know whether any or all of these
jurors were African-American.

This court has stated, “[I]n cases where the challenging
party is a member of a cognizable racial group or where race is an issue in the
case, a discriminatory purpose in the exercise of strikes against veniremembers
of that same race is more readily apparent.” 
Held, 948 S.W.2d at 50. 
The absence of such factors also has an effect on the challenger=s ability to establish a prima facie
case.  See id.  Appellant is the same race as the excluded
jurors.  The complainant, however, is
also African-American, and race is completely unrelated to issues in the case.[1]

The record in this case fares little better than that in Hatchett
v. State, in which we concluded the record was “insufficient to support
appellant’s claim . . . a [prima facie] showing was ever established.”  930 S.W.2d 844, 847 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d). 
In Hatchett, we observed, in part:

In this case, appellant argued only that four black
veniremembers had been peremptorily struck. 
He offered no other facts or circumstances which would give rise to an
inference of purposeful discrimination. . . .

We know only that four black venire members were
peremptorily struck.  We do not know the
racial composition of the entire panel. 
Nothing in the record reflects the race of the venire members challenged
for cause or of the venire members peremptorily challenged by appellant.

 

Id. (citations
omitted); see also Mata v. State, 867 S.W.2d 798, 805B06 (Tex. App.CEl Paso 1993, no pet.) (concluding in
part, given state of record, defendant failed to preserve error when he had objected
to strikes of three specific prospective jurors because they were of same
ethnic persuasion as defendant, but record did not establish the defendant’s
ethnic background or the ethnic background of the three venire persons, and did
not contain a list of the venire, in particular the racial and/or ethnic
composition of the venire).








We overrule appellant’s point of error one.

Exclusion of Evidence of the Victim’s Purported Threats against Appellant

In points of error two through four, appellant argues the
trial court reversibly erred in refusing to admit the following witness’s
testimony about threats Washington purportedly made to appellant at the scene
of the shooting: Anderson (point two), Simon (point three), and Cooper (point
four).  In point of error five, appellant
argues the trial court reversibly erred in refusing to admit appellant=s testimony about a threat Rodney
purportedly made to appellant at the scene. 
In each instance, the trial court sustained the State’s hearsay
objection and did not permit appellant to introduce the specific nature of the
alleged threat, i.e., what the declarant said.

In support of the bill of exception, Anderson testified he
heard Washington threaten appellant and his grandmother, saying, “[Y]ou’d
better get back before I shoot you and her.” 
Appellant elicited the following testimony from Simon on bill of
exception:

Q What did you hear Bowlegs [Washington] say to Billy
[appellant]?

A Well, he was walking up on him, talking about how
Billy was disrespecting his woman, and Billy was telling him that his woman was
disrespecting him by bringing somebody else back.  And Billy was backing away from him and he
was saying, we all packing out of here, going to pull whatever you got out, I
know you got a piece on you, pull it out and end this right now.  Because - -

Q That was what Calvin Washington said?

A Yeah.  Bowlegs
told him that.

 

Simon also testified Washington threatened to “wipe out the corner.”  Cooper testified she heard Washington “hollering
and screaming, saying bitch, I kill you and you better tell your grandmother
get in the house because I kill her, too.” 
Appellant did not present a bill of exception indicating what his
testimony about Rodney would have been.[2]








Complaints regarding the admission or exclusion of evidence
are subject to an abuse of discretion standard of review.  Sanders v. State, 25 S.W.3d 854, 857
(Tex. App.CHouston [14th Dist.] 2000), pet.
dism’d as improvidently granted, 56 S.W.3d 52 (Tex. Crim. App. 2001) (per
curiam); see Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App.
1993).  A trial court abuses its
discretion only when it applies an erroneous legal standard, or when no
reasonable view of the record could support the trial court’s conclusion under
the correct law and the facts viewed in the light most favorable to its legal
conclusion.  Sanders, 25 S.W.3d at
857.

“‘Hearsay’ is a statement, other than one made by the
declarant while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted.” 
Tex. R. Evid. 801(d).  “‘Matter asserted’ includes any matter
explicitly asserted, and any matter implied by a statement, if the probative
value of the statement as offered flows from declarant’s belief as to the
matter.”  Tex. R. Evid. 801(c).  “A
‘declarant’ is a person who makes a statement.” 
Tex. R. Evid. 801(b).








The probative value of the excluded statements in the present
case does not flow from whether Washington or Rodney believed they were going
to harm or kill appellant, but from the effect Washington’s and Rodney’s
alleged statements might have had on appellant. 
See Holt v. State, 249 S.W. 481, 483 (Tex. Crim. App. 1922)
(stating communicated threats illustrate the state of mind of accused relating
to his apprehension of danger from deceased) (on reh’g).  Because the statements were not offered for
the truth of the matter asserted by the declarants, they were not hearsay.  See Green v. State, 971 S.W.2d 639,
644 n.2 (Tex. App.CHouston [14th Dist.] 1998, pet. ref’d) (noting murder victim’s
account of sexual assault that occurred day before murder was not objectionable
as hearsay because it was not offered for truth of matter asserted but to show
appellant’s state of mind at time of the offense).  The trial court erred in sustaining the State’s
hearsay objections.

Appellant contends the error was constitutional error,
requiring review under Rule of Appellate Procedure 44.2(a).  We disagree. 
Erroneous exclusion of a defendant’s evidence is constitutional error
only if the evidence forms such a vital portion of the case that exclusion
effectively precludes the defendant from presenting a defense.  Potier v. State, 68 S.W.3d 657, 666
(Tex. Crim. App. 2002).  In Potier,
the trial court erroneously excluded testimony of rumors that the defendant and
a neighbor had heard from people in his neighborhood indicating that the victim
intended to kill the defendant on the day of the shooting.  Id. at 658. The court of criminal
appeals concluded the error was not of constitutional dimension.  Id. at 666.  Just as misapplication of the hearsay rule
was non-constitutional error in Potier, so, too, is the erroneous
exclusion of the content of the threats in the present case.

In determining whether the error warrants reversal, we
therefore apply Rule of Appellate Procedure 44.2(b).  Under this rule and the rules of evidence,
exclusion of evidence does not result in reversible error unless it affects a
substantial right of the accused. See Potier, 68 S.W.3d at 666 (citing Tex. R. Evid. 103(a) and Tex. R. App. P. 44.2(b)).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s verdict.  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750,
776, 66 S. Ct. 1239, 1253 (1946)).  We
will not overturn a criminal conviction for non-constitutional error if, after
examining the record as a whole, we have fair assurance the error did not
influence the jury or had only a slight effect. 
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).








Despite the trial court’s rulings, appellant was permitted to
testify extensively about Washington’s alleged threats against him.  Appellant testified Washington was angry and
said he was “going to kick my ass . . . just straight up going to wop me.”  Appellant testified Washington had a gun and
threatened to shoot appellant and appellant’s grandmother.  Appellant also testified he was afraid because
he thought Washington and Rodney were “fixing to come shoot me.”

Although Anderson was not permitted to testify he heard
Washington’s threat against appellant and his grandmother, Anderson did testify
he saw Washington approach appellant with his hands behind his back and state, “I
got your back,” a statement Anderson interpreted to mean, “You got a pistol.”  Although Simon was not permitted to testify
about the exact words he heard Washington use, Simon did testify he saw
Washington charge appellant and heard Washington threaten appellant.  Simon also testified Rodney stood with his
hands behind his back.  Finally, although
Cooper was not permitted to testify she heard Washington threaten to kill
appellant and his grandmother, she did testify she heard Washington threaten
appellant twice.  She also testified it
was when Washington reached down to his side, that appellant raised his hand to
shoot.

After examining the record as a whole, we have fair assurance
exclusion of the specific nature of the threats did not influence the jury or
had only a slight effect.  See id.   We
overrule appellant’s points of error two, three, four, and five.

Refusal to Charge on Multiple Assailants and Self-Defense








In point of error six, appellant argues the trial court
reversibly erred in refusing his request for a jury instruction on self-defense
and multiple assailants.  A defendant is
entitled to an instruction on self-defense against multiple assailants if there
is any evidence, viewed from the defendant’s standpoint, “‘that he was in
danger of an unlawful attack or a threatened attack at the hands of more than
one assailant.’”  Frank v. State,
688 S.W.2d 863, 868 (Tex. Crim. App. 1985) (quoting Wilson v. State, 145
S.W.2d 890, 893 (1940)).  A jury charge
confined only to the right of self-defense against the victim is too
restrictive if there is evidence more than one person attacked the defendant.  See Frank, 688 S.W.2d at 868.  If a trial court erroneously denies an
instruction on multiple assailants, a defendant is entitled to a reversal if he
can show he suffered some actual, rather than merely theoretical, harm from the
error.  Dickey v. State, 22 S.W.3d
490, 492 (Tex. Crim. App. 1999).  The
burden lies with the defendant to demonstrate he suffered some actual harm from
the charge error of which he complains.  Id.

In support of his contention he should have received a
multiple assailant instruction, appellant contends there was sufficient
evidence Rodney was acting in concert with Washington, with both threatening
appellant.  Assuming, without deciding,
the trial court erred in not giving a multiple assailant instruction, we
conclude appellant has not met his burden of showing harm.

As explained by the Dickey concurrence, a multiple
assailants charge permits the jury to decide that, when multiple people are
conducting an attack against the defendant, the “defendant is justified in
using force against any member of the group, even if the recipient of that
force is not engaging in conduct that would, by itself, justify the use of
force (or deadly force as the case may be).” 
Id. at 493 (Keller, J., concurring).  In the present case, appellant used force
against Washington, a person appellant alleged was attacking him.  If appellant’s evidence is believed,
Washington was reaching for a gun, committing an act that, by itself justified
the use of deadly force.  See id.  The trial court instructed the jury on
appellant’s right of self-defense against Washington.  “[T]he jury=s rejection of that theory
necessarily shows that the jury would also have rejected a multiple assailants
theory.”  Id.  Even if the trial court erred in not submitting
a multiple assailants instruction, the error was harmless.

We overrule appellant’s point of error six.

We affirm the judgment of the trial court.

 

 

/s/        John S. Anderson

Justice

 

 

Judgment rendered
and Majority and Dissenting Opinions filed August 8, 2002.

Panel consists of
Justices Anderson, Hudson, and Seymore. 
(Hudson, J., dissenting.)

Do Not Publish C Tex.
R. App. P. 47.3(b).

 








Affirmed and Majority and Dissenting Opinions filed
August 8, 2002.

 




 
 
 
 
 
 
 




 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00609-CR

____________

 

BILLY EUGENE COLLIER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 248th District Court

Harris County, Texas

Trial Court Cause No. 818,702

 



 

D I S S E N T I N G   O
P I N I O N

The majority correctly conclude the trial court erred in
excluding the testimony of three witnesses called by appellant regarding
alleged threats made by Calvin Washington and his companion, Rodney Williams,
moments before appellant shot Washington. 
The majority, however, hold the error was harmless.  Because I believe the exclusion of this
evidence, if not constitutional error, certainly affected a substantial right
of the accused, I respectfully dissent.








Of course, not every erroneous exclusion of a defendant’s
evidence amounts to a constitutional violation. 
Potier v. State, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002).  Citing federal precedent, the Court of
Criminal Appeals has held that at a minimum, the defendant must demonstrate
that the excluded evidence was important to his defense.  Id. at 663.  More specifically, the trial court’s
exclusion of evidence must have effectively prevented the defendant from
advancing his defensive theory.  Id.

Here, appellant’s defensive theory was self-defense.  While appellant was permitted to testify that
he believed he was justified in shooting Washington to save his own life, the
effectiveness of his defense was seriously eroded by the exclusion of testimony
from bystanders who would have allegedly corroborated Washington’s offensive
and aggressive demeanor and who heard him make numerous threats to kill
appellant moments before the shooting. 
Thus, under the record presented here, I would find the error to be of
constitutional magnitude.

However, even if the exclusion of this evidence does not rise
to the level of constitutional error, it is folly to suggest the error did not
have a substantial and injurious effect or influence in determining the jury’s
verdict.  Tex. R. App. P. 42.2(b). 
Accordingly, I respectfully dissent.

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Majority and Dissenting Opinions filed August 8, 2002.

Panel consists of
Justices Anderson, Hudson, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.3(b).











[1]  The trial
exhibits include appellant’s pen packet and complainant=s hospital records, both of which provide racial
designations.





[2]  To the extent
the substance of this evidence was not apparent from the context within which
the defense questions were asked, appellant has not preserved this error for
review.  See Tex. R. Evid. 103 (a)(2); Williams
v. State, 937 S.W.2d 479, 489 (Tex. Crim. App. 1996).