In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00215-CR
______________________________


MARVIN LUTHER MARSHALL, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 19374


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            Marvin Luther Marshall's conviction for burglary of a habitation has been finally affirmed. 
In our previous opinion in this case, we affirmed Marshall's conviction but reversed his sentence



and remanded the case for a new punishment trial.


 The Texas Court of Criminal Appeals has
reversed


 our decision on punishment and remanded the case for this Court to perform a harm
analysis under Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). 
Because we find no egregious harm, we affirm Marshall's punishment.
The Punishment Charge Error Was Not Egregiously Harmful
            A punishment charge is erroneous if it does not instruct the jury on the range of confinements
and fines within which punishment must be assessed under the contingency that the jury finds the
enhancement allegations untrue. Kucha v. State, 686 S.W.2d 154, 155 (Tex. Crim. App. 1985). In
the charge submitted to the jury in this case, no such contingency was provided. That was error. If
such an instruction is missing, and the omission was not objected to, the appellate court must
determine if this error is so harmful the appellant has not had a fair and impartial trial. Id. Harm
must be determined from the entire record, not just the erroneous charge. Id.
            In connection with that defect in the jury charge on punishment, Marshall also asserts that
the verdict form constituted error in failing to give the jury the option of finding untrue either or both
of the enhancement convictions.


 Because the verdict form in the record does, in fact, fail to allow
the jury to find either or both enhancement allegations untrue, the form was error. See Nevarez v.
State, 832 S.W.2d 82, 86 (Tex. App.—Waco 1992, pet. ref'd). But because that defect was not
objected to, that error also becomes harmful only if we find egregious harm. Almanza, 686 S.W.2d
at 171.
            In evaluating harm, we assess the harm "in light of the entire jury charge, the state of the
evidence, including contested issues and weight of probative evidence, the argument of counsel and
any other relevant information revealed by the record of the trial as a whole." Id. at 171; see Ngo
v. State, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005). Under Almanza, jury instruction error must
cause actual, not just theoretical, harm. Dickey v. State, 22 S.W.3d 490, 492 (Tex. Crim. App.
1999). Error causes egregious harm if it affects "the very basis of the case," deprives "the defendant
of a valuable right," or "vitally affect[s] a defensive theory." Hutch v. State, 922 S.W.2d 166, 171
(Tex. Crim. App. 1996). Thus, the essential question before us is whether the errors in the
punishment charge and the jury form on punishment affect "the very basis of the case," "deprive the
defendant of a valuable right," or "vitally affect a defensive theory" as to punishment. Id. at 171.
            Although Marshall formally denied the enhancement allegations and thus put the State to its
proof of the prior convictions, the heart of his defense during the short punishment phase was not
that Marshall had not committed the alleged prior offenses, but that he committed no violence during
his offenses.


 The arguments by counsel were over violence or lack of violence in Marshall's history
and the difference in recommended terms of imprisonment—the State seeking forty to fifty years and
Marshall arguing for a sentence of twenty-five years. 
            Marshall's argument for a twenty-five-year sentence is revealing. If the jury found Marshall
had been twice previously, finally, and sequentially convicted of a felony offense—as alleged in the
State's enhancement notice—the minimum applicable sentence in this case would have been twenty-five  years,  exactly  the  sentence  Marshall's  counsel  asked  of  the  jury.  See  Tex.  Pen.  Code
Ann. § 12.42(d) (Vernon Supp. 2005). Thus, Marshall essentially conceded the enhancement issue
in his closing argument.
            The only evidence offered during the punishment phase consisted of a "pen packet" reflecting
Marshall's prior offenses, and identity evidence establishing that Marshall had, in fact, committed
the prior offenses as charged. 
            In light of the entirety of the charge, the evidence, the argument of counsel, and the record
in general, we conclude the charge error did not cause egregious harm. Marshall's defensive theory
on punishment was that he had not been violent and thereby deserved a sentence at the lower end of
the punishment range: twenty-five years. He did not argue, and there was no evidence, that he had
not committed the alleged prior offenses. Because the punishment charge errors could have affected
only the jury's findings on whether Marshall had committed the prior offenses, the errors did not
"vitally affect a defensive theory," in as much as the record suggests Marshall effectively conceded
that the State's evidence was sufficient to support the enhanced punishment range. Nor can we
conclude on the record before us that the errors deprived Marshall of a valuable right in that Marshall
did not ask, though he had the right to ask, the jury to find that the State had failed to meet its burden
of proof on the enhancements, thus seeking to open the door to a lower minimum punishment. And
similarly, in as much as the core issue to be decided by the jury was an appropriate punishment, any
determination by us that the error affected "the very basis of the case" would be, at best, purely
theoretical—rather than actual, as required by Almanza. Therefore, we conclude Marshall suffered
no egregious harm from jury charge error.
No Reversible Harm Was Caused by Failure to Read the Enhancement Allegations, or Failure to
Take Marshall's Plea Before Punishment Phase Evidence Was Received
            Just as jury charge error caused Marshall no egregious harm, the trial court's procedural error
in not reading the enhancement allegations, and not taking Marshall's plea until after the punishment
evidence was received, caused no egregious harm.
            The Texas Court of Criminal Appeals specifically remanded this case to us only for the
purpose of performing a harm analysis pursuant to Almanza. See Marshall, 185 S.W.3d at 903. 
Almanza requires us to subject jury charge error to egregious harm analysis, when no objection was
made to the error. See Almanza, 686 S.W.2d at 171. We have performed that analysis as to the jury
charge error. We now address the procedural error in not reading the enhancement allegations or
taking Marshall's plea thereto at the beginning of the punishment phase of trial.
            As we have noted, Marshall's strategy during the punishment phase of trial was to seek a
sentence of twenty-five years' imprisonment, the shortest sentence available assuming the jury found
that Marshall had committed the two enhancement offenses. Marshall did not actively contest, either
with evidence or argument, the allegation that he had committed the two enhancement offenses. At
the end of the presentation of the State's evidence of the enhancement offenses, Marshall's counsel
agreed when the trial court entered a plea of "not true" for him.
            As with the jury charge errors, the reading of the enhancement allegations and the taking of
a plea to them both could have affected only the question of whether Marshall had committed the
two enhancement offenses. Our previous analysis as to the jury charge errors is equally applicable
to these errors. And based on the same rationale, we conclude these procedural errors—considered
both individually and as to any cumulative effect with the other errors—did not cause egregious
harm to Marshall. We also note that the record reveals that the failure to read the enhancement
allegations or to take Marshall's plea to them at the beginning of the punishment phase did not
mislead Marshall into any admission, since he did not testify during the punishment phase. See 
Linton v. State, 15 S.W.3d 615, 621 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).



No Ineffective Assistance of Counsel Appears
            Marshall also contends that, during the punishment phase of trial, his counsel's performance
was deficient because of counsel's failure to object to (1) the punishment phase jury charge, (2) the
defective verdict form, and (3) the trial court's failure to read the enhancement allegations or to take
Marshall's plea. Ineffective assistance of counsel claims are evaluated under a two-part test which
requires a showing of both deficient performance and resulting prejudice. Strickland v. Washington,
466 U.S. 668 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). When
ineffective assistance is raised on direct appeal, appellate counsel and the court must proceed on a
trial record not developed with an eye toward litigating or preserving the claim—thus, a record that
is often incomplete or inadequate for this purpose. Freeman v. State, 125 S.W.3d 505, 506 (Tex.
Crim. App. 2003). While the punishment phase errors here could have been avoided had trial
counsel objected to them, the record before us is not sufficient to warrant a finding of ineffective
assistance of counsel, particularly because there is no showing that the errors had any effect on the
outcome of the punishment phase of trial. Cf. Bone v. State, 77 S.W.3d 828, 836–37 (Tex. Crim.
App. 2002).
            For the above reasons, we affirm Marshall's punishment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          June 5, 2006
Date Decided:             July 19, 2006

Do Not Publish