

# NUMBER 13-05-00714-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SHERRY LYNN SMITH,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

**On appeal from the 278th District Court
of Grimes County, Texas.**

# MEMORANDUM OPINION ON REMAND

**Before Justices Yañez, Benavides and Vela[1]
Memorandum Opinion On Remand by Justice Benavides**

In our original opinion in this case, we sustained appellant Sherry Lynn Smith's

---

[1] The Honorable Linda Reyna Yañez, former Justice of this Court, did not participate in this opinion because her term of office expired on December 31, 2010; therefore, this case, which was argued before the panel on December 7, 2007, will be decided by the two remaining justices on the panel. *See* Tex. R. App. P. 41.1(b) ("After argument, if for any reason a member of the panel cannot participate in deciding a case, the case may be decided by the two remaining justices.").

first two issues on appeal, reversed her judgment of conviction, and rendered a judgment of acquittal. *See Smith v. State*, 286 S.W.3d 412, 438 (Tex. App.—Corpus Christi 2008), *rev'd and remanded*, 332 S.W.3d 425, 448 (Tex. Crim. App. 2011). The Texas Court of Criminal Appeals reversed, holding (1) that the trial court did not err in refusing to instruct the jury that accomplice witness Daniel "Boone" Gardner was an accomplice as a matter of law; and (2) that sufficient evidence existed to connect Smith to the murders as required by article 38.14 of the code of criminal procedure. *Smith*, 332 S.W.3d at 448. *See also* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). The court of criminal appeals remanded the case to address Smith's remaining issues. *See Smith*, 332 S.W.3d at 448. We now address the remaining three issues, which we re-number as two,[2] regarding (1) whether the trial court erred when it overruled Smith's objection to the court's charge on extraneous offenses and refused to include her specifically-requested instruction; and (2) whether the trial court erred when it denied Smith's motion for mistrial when the State commented on her pre-arrest silence. We affirm.

## I.   BACKGROUND[3]

A Grimes County jury convicted Smith of capital murder in the shooting death of her husband Carey Smith and her father-in-law Charles Smith in the early-morning hours of December 7, 2002, as they both slept. She was sentenced to life in prison. *See* TEX. PENAL CODE ANN. §§ 19.03(7)(a); 12.31(a) (West 2011).

---

[2] See TEX. R. APP. P. 47.1.

[3] As this case is on remand and the parties are familiar with the facts of the underlying cause, we will not recite them in this opinion. *See* TEX. R. APP. P. 47.1. Instead, we will incorporate the background information detailed in Texas Court of Criminal Appeals opinion. *See Smith v. State*, 332 S.W.3d 425, 428–38 (Tex. Crim. App. 2011). We will, however, provide supplemental background pertinent to the issues in this appeal.

Prior to his murder, Carey and Smith were married for a little more than two years, after a brief courtship. Both were retired correction officers from the Texas Department of Criminal Justice, and witnesses described the couple's marriage as one of convenience rather than love. Carey and his father Charles ran a hay business on their property, and witnesses described Charles as a widower who suffered from a variety of maladies that required home-assisted care.

Prosecutors presented evidence and elicited testimony from a variety of witnesses during its case-in-chief including from Smith's ex-husband and one-time co-defendant, Daniel "Boone" Gardner, Grimes County sheriff's investigators, the medical examiner, and scientific/DNA experts, who tested evidence collected from the crime scene. More specifically, the State elicited testimony and presented evidence—admitted for the limited purpose of showing motive and state of mind—that Smith had taken out credit cards under Carey's name, as well as in her own name, in excess of tens of thousands of dollars, which she concealed from Carey.

## II. EXTRANEOUS ACTS AND OFFENSES AND CHARGE ERROR

In her third and fourth issues, Smith asserts that the trial court erred when it overruled her objection to the court's charge and subsequently refused to include her requested instruction that required the jury to find beyond a reasonable doubt that Smith had committed the extraneous offenses before they could consider them for any purposes, and that this error caused some harm requiring a reversal.

### A. Standard of Review and Applicable Law

We review jury charge issues under the standard set forth in article 36.19 of the code of criminal procedure as interpreted by *Ngo v. State*, 175 S.W.3d 738 (Tex. Crim.

App. 2005) (en banc). *See* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). "Our first duty in analyzing a jury-charge issue is to decide whether error exists." *See Ngo*, 175 S.W.3d at 743 (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (en banc)). If we find error, we analyze that error for harm, depending on whether the defendant preserved error by objection. *Id.* If a defendant properly objected to the charge, we will reverse for jury-charge error if we find "some harm" to a defendant's rights. *Id.* However, if a defendant failed to object or stated that he had no objection to the charge, we will not reverse for the jury-charge error unless the record shows "egregious harm" to the defendant. *Id.* at 743–44.

Extraneous acts used to show a person's character or character traits are generally inadmissible to prove action in conformity with the current offense, but if its offer is used to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, it is admissible, provided that reasonable notice of its introduction is given to the accused. *See* TEX. R. EVID. 404. Further, during the prosecution of a murder, the state or defendant:

> shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.36 (West 2005). If extraneous acts are deemed admissible by the trial court, "the jurors must be instructed about the limits on their use of that extraneous [act] if the defendant so requests." *Ex parte Varelas*, 45 S.W.3d 627, 631 (Tex. Crim. App. 2001) (en banc). Furthermore, if a defendant requests a limiting instruction to the admitted extraneous acts, she is entitled to one. *See id.* A trial court

4

errs when it fails to give a requested limiting instruction in this situation. *See id.* (citing

*Abdnor v. State (Abdnor II)*, 808 S.W.2d 476, 478 (Tex. Crim. App. 1991)). Finally,

when extraneous offenses and acts are admitted for a limited purpose, a defendant is

entitled, during the guilt/innocence phase of the trial to request an instruction in the

charge that jurors are not to consider extraneous acts or offenses admitted for a limited

purpose unless they believe beyond a reasonable doubt that those extraneous acts were

committed by the defendant. *See Varelas*, 45 S.W.3d at 631–32 (citing *George v.*

*State*, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994) (en banc)). Likewise, if a defendant's

counsel requests an instruction for the jury that they "could not consider extraneous act

evidence unless they believed beyond a reasonable doubt that the [defendant]

committed those acts, the requested charge should have been given." *Varelas*, 45

S.W.3d at 631.

## B. Discussion

The following portion of the charge was provided to the jury regarding extraneous

offenses/acts:

> 2. The word "evidence" as used in this Charge means the testimony of the witnesses and exhibits admitted as evidence by the Court. In arriving at your verdict, consider only the testimony introduced here under oath and such exhibits, if any, as have been admitted as evidence under the rulings of the Court. Statements made by the attorneys are not evidence. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case. You must disregard any testimony or exhibit the Court has stricken or not admitted. Evidence admitted for a limited purpose must be considered for that purpose only.

Before the court's charge was read to the jury, Smith's counsel objected to the

Court's charge stating, in pertinent part:

5

DEFENSE COUNSEL:   Number four.   The Defendant objects that this Charge fails to include a limiting instruction regarding certain extraneous matters that were introduced before the jury which showed motive or state of mind.

More specifically, there was evidence of possible violations of the law involving credit card abuse and misuse of credit cards which were extraneous matters or acts of misconduct for which the Court gave a limiting instruction at the time they were introduced into evidence. But the Court has failed in its Charge to include a limiting instruction limiting the jury's consideration of such extraneous offenses or acts of misconduct to the purpose or reason for which they were introduced.   And they were not introduced and should not be considered by the jury unless first they were believed beyond a reasonable doubt to have occurred and, second, they can only be considered for the limited purpose of either motive or state of mind for which the State specifically informed the Court they were introducing them for.   So we object to the Charge not having a limiting instruction appearing therein.

. . . .

THE COURT:   Now, on the question of limiting instruction, limiting the use of evidence for the purpose for which it was to be admitted.   I would refer you to the last sentence in paragraph two which says "evidence admitted for a limited purpose must be considered for that purpose only." Did you see that?

DEFENSE COUNSEL:   I did see that, Your Honor.

THE COURT:   Okay.   And I believe after every piece of evidence that was admitted for a limited purpose that the jury was instructed that they would consider it only for the purpose that it was offered, which I believe was motive at that time.

6

. . . .

I'm not going to change.

. . . .

All of your objections are overruled.

Smith argues that the trial court erred in its charge to the jury regarding extraneous acts of credit card abuse because it did not require the jury to find beyond a reasonable doubt that Smith committed the extraneous acts before it could consider those acts for any purpose. We agree. If a defendant requests a reasonable doubt instruction regarding extraneous acts in the court's charge, the defendant is entitled to it. *See Varelas*, 45 S.W.3d at 631–32; *George*, 890 S.W.2d at 76. Failure to include the reasonable doubt instruction amounts to error by the trial court. *See Varelas*, 45 S.W.3d at 631–32. The record in this case clearly shows that Smith's counsel requested that the trial court include the reasonable doubt instruction, and that request was denied by the trial court. We respectfully disagree with the trial court's position that the charge sufficiently addressed Smith's objections. A limiting instruction of extraneous evidence is separate and distinct from the reasonable doubt instruction requested by Smith's counsel for the jury charge. *Compare Abdnor II*, 808 S.W.2d at 478 (noting the trial court's error for not including a requested limiting instruction on evidence of defendant's extraneous offenses admitted to show prior inconsistent statements), *with George*, 890 S.W.2d at 76 (holding that a separate instruction is required, if requested by a defendant, from the trial court to the jury to not consider extraneous acts/offenses, unless it believes that the defendant committed those

7

acts/offenses beyond a reasonable doubt). Accordingly, we conclude that the trial court erred for not including the requested *George* instruction in its charge.

The record indicates that Smith's counsel objected to the charge error; thus, we will analyze the error to determine whether "some harm" was placed on Smith's rights to require reversal. *See Ngo*, 175 S.W.3d at 743 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc)). To satisfy our harm analysis, the record must show that a defendant has "suffered actual, rather than merely theoretical, harm from a jury instruction error." *Id.* at 750 (citing *Almanza*, 686 S.W.2d at 174); *see Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999) (en banc) (citing *Airline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (en banc)). "[P]resence of any harm, regardless of degree, is sufficient to require a reversal of the conviction." *Dickey*, 22 S.W.3d at 492. In our review, we determine whether the error was calculated to injure the rights of the defendant examined "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006).

Here, Smith argues that the charge itself, which included only a general limited-purpose instruction of the extraneous acts evidence, gave the jury no guidance as to how to determine if the extraneous acts were committed and left the jury with no choice but to conclude that Smith had committed the extraneous offenses. We disagree. The State directs us to the record in which the trial court admonished the jury during the trial to consider the credit-card evidence solely for the purpose of motive, if

they so believed it showed motive. The trial court stressed to the jury that the mere fact that the credit-card evidence was admitted for the limited purpose of proving motive did not mean that it did, in fact, prove motive. The charge, again, reiterated that point— that is, the evidence was admitted for a limited purpose and that they could only consider it for a limited purpose, if they believed it occurred to prove that limited purpose.

Next, the jury heard sufficient evidence that Smith incurred credit card debt in Carey's name, without Carey's knowledge, and struggled to pay off the debt. Evidence supporting the State's theory of motive weighed in the prosecution's favor based on the credit card records and testimony from Smith and Boone's daughter Tori Sword, Smith's ex-husband Boone, and Smith's friend Niki Johnson. The jury had the choice, based on the evidence, to disbelieve the State's theory of credit card abuse to prove motive for capital murder. As such, the credit card evidence, admitted for its limited purpose, did not undermine Smith's defense so as to cause harm. *See Abdnor v. State*, 871 S.W.2d 726, 740–41 (Tex. Crim. App. 1994) (en banc).

Smith further argues that the State's focus on the credit card evidence during closing arguments demonstrated the State's heavy reliance on that evidence to prove its case without ever telling the jury that this alleged credit card abuse had to be found beyond a reasonable doubt. The State's argument was simply that—argument, not evidence. The trial court's charge admonished the jury of that fact, as well. It was undisputed that the State relied on the credit card evidence to prove its case because it was offered to prove Smith's motive for the murders. Again, during trial and in the court's charge, the trial court instructed the jury to consider the credit card evidence solely for that limited purpose, if it chose to believe the State's theory. Smith's reliance

9

on *Abdnor* to argue that the State's references to the alleged credit card abuse during closing arguments were "partisan comments" are misguided, because the jury was admonished by a limiting instruction during trial and to an extent in the charge that they should consider the admitted evidence solely for its limited purpose. *See Abdnor*, 871 S.W.2d at 740. Here, unlike *Abdnor*, a limiting instruction was given to the jurors. *Id. See Ray v. State*, 764 S.W.2d 406, 414 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (referencing the presumption stated in *Rose v. State*, 752 S.W.2d 529, 554 (Tex. Crim. App. 1988) that the jury follows the trial court's instructions).

Accordingly, we conclude that the trial court's charge error was harmless. While the charge was incomplete, it did not give the jury the unfettered ability to give unlimited weight to the extraneous acts so as to injure Smith's rights, and "an erroneous or incomplete jury charge . . . does not result in automatic reversal of a conviction." *Abdnor*, 871 S.W.2d at 731. Instead, it gave the jury a limited window of how to consider the evidence and for what purpose. Smith's third and fourth issues are overruled.

## III.  PRE-ARREST SILENCE

In her final issue, Smith contends that the trial court committed reversible error when it denied her motion for mistrial, when the State commented on Smith's pre-arrest silence during closing argument.

## A.  Standard of Review

We are required to reverse a judgment of conviction or punishment if the record in a criminal case reveals constitutional error, subject to a harmless error review, if we determine beyond a reasonable doubt that the error contributed to the conviction or

punishment of the defendant. *See* TEX. R. APP. P. 44.2(a). "A trial court's denial of a motion for mistrial is reviewed under an abuse of discretion standard." *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (citing *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)).

**B.      Discussion**

The portion of the record in which Smith appeals involves comments made during the State's closing argument. The following colloquy took place:

| | |
|---|---|
| PROSECUTOR: | . . . . |
| | I know they made her mad, but it's because she wasn't wanting to talk about any of this they had found and she knew she was caught and they knew. They found the credit cards and they knew they found the reason and she shut down. She knew she was on the hot seat. And she didn't say look, I made a mistake— |
| DEFENSE COUNSEL: | Judge, Your Honor, I have to object. May I approach the bench? |
| | (Discussion at the bench out of hearing) |
| THE COURT: | Ladies and gentlemen, you will disregard the last statements of [the prosecutor]. |
| DEFENSE COUNSEL: | Judge, because that was a comment on the right to remain silent I'm going to request that the Court make that instruction which it's done and I think the prejudicial effect of that comment cannot be cured by the instruction and request a mistrial. |
| THE COURT: | Overruled. |

The first question in this analysis turns on whether the State's comment on Smith's pre-arrest silence amounted to constitutional error. *See* TEX. R. APP. P. 44.2(a).

11

Courts in Texas have held that "pre-arrest silence is a constitutionally permissible area of inquiry." *Waldo v. State*, 746 S.W.2d 750, 755 (Tex. Crim. App. 1988) (en banc) (citing *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980)). Thus, because this issue on appeal does not involve a constitutional error, we will abandon our rule 44.2(a) inquiry and apply the abuse of discretion standard of review set forth in *Simpson*. *See* 119 S.W.3d at 272.

A mistrial is appropriate for "'highly prejudicial and incurable errors,'" such as those that are "'clearly prejudicial to the defendant and are of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors.'" *Id.* (quoting *Wood*, 18 S.W.3d at 648). "Ordinarily, a prompt instruction to disregard will cure error . . ." and not amount to an abuse of discretion, if the trial court denies the motion for mistrial. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (en banc).

In this case, assuming without deciding that the comment by the State objected by Smith was error, it was not one that was "highly prejudicial" or "incurable" requiring a mistrial because it was a brief discussion and one that could be withdrawn from the minds of the jurors. *See Simpson*, 119 S.W.3d at 272. Further, again, assuming without deciding that the prosecutor's comments amounted to error, the trial court in this case promptly admonished the jury to disregard the statements made by the State's prosecutor. We conclude that the trial court did not commit reversible error or abuse its discretion in denying Smith's motion for mistrial. Smith's fifth issue is overruled.

## IV.     CONCLUSION

We affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of April, 2012.