NO. 07-09-00319-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 9, 2010

_____

DAVID TULIO RODRIGUEZ, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 10,257; HONORABLE WILLIAM D. SMITH, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, David Tulio Rodriguez, was convicted of aggravated assault[1] of a public servant.[2] The jury assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for 50 years and a fine of $10,000. Appellant appeals contending that the evidence is insufficient to sustain the judgment and that the trial court committed reversible error by not reading

---

[1] See TEX. PENAL CODE ANN. § 22.01(a)(2), § 22.02(a)(2) (Vernon Supp. 2010).

[2] See id. § 22.02(b)(2)(B) (Vernon Supp. 2010).

the enhancement paragraphs to the jury and/or by failing to have appellant enter a plea to the enhancements. Disagreeing with appellant, we affirm.

Factual and Procedural Background

On November 9, 2008, Sergeant Josh Akins of the Fritch Police Department was on duty conducting traffic patrol in Fritch, Texas. Akins's attention was drawn to the Taylor Mart where he observed a male carrying a trash can to the front of the store. Since it was 12:30 a.m. and the store was closed, Akins found this to be suspicious conduct. As Akins continued to observe the store, he observed another male throw something through the door, and then the first male went into the store. Realizing that he was observing a burglary in progress, Akins called for a backup unit and proceeded without any emergency lights or siren to go to the front of the store. As Akins pulled up to the front of the store, both individuals began running away. Akins proceeded to pursue them on foot while giving verbal commands for them to stop. Akins later identified the first man as the co-defendant, Jose Martinez. The second male, the one who entered the store, was eventually identified as appellant. He eventually stopped Martinez by telling him to stop or he would "taze" him. As Akins was putting the hand-cuffs on Martinez, he observed appellant go around the corner toward the back of the store.

While continuing to attempt to get the hand-cuffs on Martinez, Akins noticed a vehicle, later identified as a golden-colored Pontiac Firebird. Akins realized that the dome light in the interior of the vehicle was on. That struck him as unusual, and he decided that, after cuffing Martinez, he would approach the vehicle. Akins observed

2

appellant run from the back of the store to the vehicle and begin searching through the car. Fearing appellant was looking for a weapon and knowing Martinez did not have any weapons on him, Akins approached the vehicle. Akins began drawing his weapon as he approached the vehicle. While approaching the vehicle, Akins told appellant not to move. Akins ended up in front of the driver's side of the car looking directly at appellant. Akins testified that the uniform he was wearing at trial was the same uniform he had been wearing during the encounter with appellant.

At the moment Akins was in front of the car, appellant "gunned" the car. Akins testified that the car spun its tires, and he jumped to the side to avoid the vehicle. The rear of the car came directly at Akins, and he had to again step out of the way. Akins testified that he was afraid that the car was going to hit him. As the car left, Akins fired one round from his service revolver at the rear tire. Appellant escaped and was not identified and captured until several days later. Appellant was charged with aggravated assault on a public servant. [3]

During the State's presentation of evidence, co-defendant Martinez was called as a witness. Martinez testified that, after he had handed the trash can to appellant inside the store, he stayed outside to act as a lookout. Martinez observed Akins driving toward the store and told appellant, "There is a cop behind us." It was at this time that both Martinez and appellant tried to flee.

---

[3]The original indictment contained a second count of burglary. However, the trial court granted a motion for directed verdict against the State at the conclusion of the State's case.

Prior to the trial, the State filed a notice to seek enhancement of felony punishment range of the aggravated assault on a public servant count in the indictment. In the notice, the State alleges that appellant has three prior felony convictions. After the jury found appellant guilty of aggravated assault on a public servant, the State offered evidence to prove up the three prior felony convictions. However, the prior felony convictions were not read to the jury, nor did appellant enter any type of plea to these prior convictions, before the State offered proof of the priors. The Court's Charge on Punishment did contain the allegations of the three prior felony convictions and an application paragraph as to those prior convictions. The jury subsequently returned a verdict of confinement in the ID-TDCJ for 50 years with a fine of $10,000.

Appellant has appealed contending that the evidence is both factually and legally insufficient to support the judgment. Specifically, appellant contends that the evidentiary insufficiency goes to the element of appellant's knowledge that Akins was a public servant. Additionally, appellant contends that the failure of the trial court to require the enhancement paragraphs to be read and to obtain a plea from appellant render the judgments reversible. We disagree and affirm.

Evidentiary Sufficiency

As an initial consideration, we observe that appellant's appeal contends that the evidence is both legally and factually insufficient. Appellant's brief was prepared and filed before the Texas Court of Criminal Appeals issued its opinion in Brooks v. State, No. PD-0210-99, 2010 Tex.Crim.App. LEXIS 1240 *25-*26 (Tex.Crim.App. Oct. 6, 2010), wherein the court ruled that there is no distinction between a claim of legal as

4

opposed to factual insufficiency of the evidence. Further, the court expressly overruled Clewis v. State, 922 S.W.2d 126 (Tex.Crim.App. 1996), and its purported application to factual sufficiency questions. Id. at *55. What the court appears to do is to urge the reviewing court to apply a more rigorous application of the sufficiency test set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Id. at *58. Therefore, we will review appellant's claims of evidentiary sufficiency under the standard of review set forth in Jackson. See 443 U.S. at 319.

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at 319; Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). We measure the legal sufficiency of the evidence against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Finally, when reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. See Brooks, 2010 Tex.Crim.App. LEXIS 1240 at *37 (discussing Judge Cochran's dissent in Watson v. State, 204 S.W.3d 404, 448-50 (Tex.Crim.App. 2006) as outlining the proper application of a single evidentiary standard of review).[4]

---

[4] We note that this Court has at times quoted Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988) for the proposition that we had to uphold the verdict of the jury unless it was irrational or unsupported by more than a mere modicum of evidence. We view such a statement, insofar as a modicum of evidence being sufficient evidence,

Analysis

To prove the offense of aggravated assault on a public servant by use of a deadly weapon, as alleged in the indictment, the State must prove:

1) On or about November 9, 2010

2) appellant

3) intentionally and knowingly used a deadly weapon,

4) an automobile, that in the manner of its use and intended use was capable of causing serious bodily injury or death,

5) and appellant did then and there, threaten Josh Akins

6) with imminent bodily injury or death

7) and that appellant knew that Josh Akins was a public servant,

8) attempting to lawfully discharge an official duty,

9) attempting to detain appellant.

See TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2)(B); Malik, 953 S.W.2d at 240. Appellant's evidentiary sufficiency argument is focused on whether he had knowledge that Akins was a public servant. Therefore, we will review the record for evidence of that element.

The record shows that on the night in question Akins was on duty as a Fritch Police Department Sergeant. Akins was driving a vehicle that had emergency lights and equipment on it when he observed the burglary in progress and proceeded to the

---

as contrary to a rigorous application of the Jackson standard of review urged by the Court in Brooks.

6

Taylor store without activating his emergency equipment. Akins testified that he was wearing the same uniform on the night in question that he wore on the day he testified. That uniform was observed by the jury. The co-defendant, Martinez, testified that, while acting as lookout, he saw Akins's car approaching the Taylor store and stated to appellant, "There is a cop behind us." At that precise moment, appellant and Martinez fled the store. While pursuing the two fleeing burglars, Akins yelled, "Stop or I will taze you." At that instance, Martinez, who was closer to Akins, stopped and went to the ground. After attempting to secure Martinez, Akins saw appellant in the vehicle and went toward him. Akins, while wearing his uniform, stood directly in front of the vehicle being driven by appellant. Further, Akins testified that he made direct eye contact with appellant while standing in front of the vehicle. The jury also saw the video of burglary from the security camera in the store. During the examination of Martinez, the DVD was played, and Martinez identified the officer getting out of his patrol vehicle. The jury also observed this.

In light of this record, when viewed in the light most favorable to the verdict, was the jury acting rationally when it found appellant guilty beyond a reasonable doubt? Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. We think so, and, thus, overrule appellant's issue regarding the sufficiency of the evidence.

## Enhancement Allegations

Appellant's final point is that the trial court committed reversible error when the punishment phase of the trial commenced without the reading of the enhancement paragraphs and by failing to require appellant to enter a plea to those allegations.

7

Appellant defines his issue within the framework of article 36.01(a)(1) Texas Code of Criminal Procedure.[5] For purposes of our analysis, we will assume, *arguendo,* that the trial court erred in not having the enhancement document read and in not receiving appellant's pleas to the allegations prior to commencing the punishment portion of the trial.

Standard of Review

Appellant contends, at least by implication, that we must review the actions of the trial court under an abuse of discretion standard of review. According to appellant's reasoning, the Texas Court of Criminal Appeals decision in Turner v. State, 897 S.W.2d 786 (Tex.Crim.App. 1995), controls the outcome of the case before the court. Turner concerned a charge of driving while license suspended with a prior conviction for the same offense alleged in the information to raise the punishment range from a Class B misdemeanor to a Class A misdemeanor. Id. at 787. In Turner, as in the case before this Court, the trial court did not have any enhancement allegation read, nor did the trial court receive the defendant's plea to the enhancement allegation. Ultimately, the court in Turner found that the trial court's action was error, and that the error was not subject to a harm analysis. Id. at 789. Appellant asks us to apply the same reasoning.

The State counters that, because the enhancement allegations were not read to the jury and no pleas were entered, the issues involved in the enhancements were never joined. See Warren v. State, 693 S.W.2d 414, 415 (Tex.Crim.App. 1985).

_____

[5] Further reference to the Texas Code of Criminal Procedure will be by reference to "article _____."

8

Further, the State contends since the appellant was punished within the range of a first-degree felony, the applicable range for the offense appellant was convicted of, there was simply no error. Id.

We find that appellant's reliance on Turner is misplaced. First, Turner involved a fact scenario not present in our case, that is the enhancement allegations were contained in a paragraph within the charging instrument. Second, since Turner was handed down, the Texas Court of Criminal Appeals has determined that enhancement allegations do not need to be contained within the body of the primary charging document. See Brooks v. State, 957 S.W.2d 30 (Tex.Crim.App. 1997). This decision implicates the basic underpinnings of Turner: that the trial court was required to strictly comply with the terms of article 36.01, and that such compliance was not subject to any harm analysis under Texas Rule of Appellate Procedure 81(b)(2).[6] Finally, under the provisions of Rule 44.2, we are instructed to review alleged error, constitutional or nonconstitutional, for harmlessness. See TEX. R. APP. P. 44.2.[7]

We, likewise, do not apply the principles of Warren because the factual scenario does not support the same conclusion in our case. See 693 S.W.2d 414, 415. In Warren, the defendant objected to the failure to read the enhancement paragraphs after the jury punishment verdict was received but before sentence was pronounced. Id. The trial court crossed out the references to the enhancements out of the judgment and

---

[6] Texas Rules of Appellate Procedure were amended effective September 1, 1997, and the current rule 44.2(b) was enacted.

[7] Further reference to the Texas Rules of Appellate Procedure will be by reference to "Rule ___" or "rule ___."

9

sentence and took the position that the issue was not properly raised. Id. However, the Texas Court of Criminal Appeals said the issue was preserved, reversed the judgment and sentence, and sent the case back to the trial court. Id. In our case, there is no question about the fact that the issue now complained of by appellant was not raised by objection or motion for new trial.

The proper standard for review of this case is as a charge error. See Marshall v. State, 185 S.W. 3d 899, 903 (Tex.Crim.App. 2006). As in Marshall, the jury charge contained specific paragraphs referencing the specific allegations of prior convictions and the application of each to a punishment verdict. Yet, appellant did not object that there had been no enhancement allegations read to the jury and that he had not pleaded to any enhancement allegations. Finally, there was a motion for new trial filed in this case, yet the motion makes no reference to the enhancement allegations. Therefore, we find ourselves reviewing the alleged charge error pursuant to the egregious harm standard set forth in Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). Id.

Analysis

When evaluating harm, we assess the harm in light of the entire record. Id. Any error caused will be considered egregious error if it affects the very basis of the case and deprived the defendant of a valuable right or vitally affected a defensive theory. Drury v. State, 225 S.W.3d 491, 504 (Tex.Crim.App. 2007) (citing Hutch v. State, 922 S.W.2d 166, 171 (Tex.Crim.App. 1996)).

During the presentation of the State's case on punishment, the only witness was the fingerprint expert. The only exhibits were the "pen packets," introduced to prove up appellant's prior convictions. When appellant testified during the punishment phase, he acknowledged the prior convictions and, very importantly, he acknowledged that if the jury found the allegations of the prior convictions true he would be facing a minimum sentence of 25 years incarceration in the ID-TDCJ. However, the thrust of appellant's testimony was that he had always been convicted of burglary but had never been a violent offender. When the charge was prepared the jury was advised of the three priors alleged in the State's filing of the notice of intent to seek enhancement of punishment pursuant to § 12.42(d). Further, the jury was advised about the application of each factual scenario, a finding of true as to one, two, or all three of the prior felony convictions. Finally, during the argument of the punishment phase, appellant argued he had never been a violent person and the amount of time he would have to serve if the jury found that appellant had committed all three prior felonies. Essentially, this case demonstrates that the core or ultimate issue before the jury was the appropriate amount of prison time to which appellant would be sentenced. The State and appellant each had a theory of how the jury was to arrive at that term. The failure to read the enhancement paragraphs or receive a plea to those paragraphs did nothing to alter this determination. Any supposed harm we could outline would be theoretical and, therefore, not the actual harm required to be shown. See Dickey v. State, 22 S.W.3d 490, 492 (Tex.Crim.App. 1999). There being no egregious harm shown, we overrule appellant's last issue.

11

Conclusion

Having overruled appellant's issues, we affirm the trial court judgment.

Mackey K. Hancock
Justice

Do not publish.

Pirtle, J., concurring.