ACCEPTED
06-16-00067-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
8/15/2016 5:34:48 AM
DEBBIE AUTREY
CLERK

# SIXTH COURT OF APPEALS
# TEXARKANA, TEXAS

## 06-16-00067-CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

8/15/2016 5:34:48 AM

DEBBIE AUTREY
Clerk

---

## MICHAEL ALAN HODGES,
Appellant

### v.

## THE STATE OF TEXAS,
Appellee

---

## On Appeal from the 54th District Court
## Hon. Matt Johnson Presiding
## No. 2014-1486-C2

---

## APPELLANT'S BRIEF

---

Charles W. McDonald
SBOT NO: 13538800
2024 Austin Avenue
Waco, Texas 76701
Tel: (254) 752-9901
Fax: (254) 754-1466
Email:
ringwraith1cwm@aol.com

*ORAL ARGUMENT REQUESTED*

# IDENTITY OF PARTIES AND COUNSEL

## *Parties*

Appellant                    Mr. Michael Alan Hodges

Appellee                     The State of Texas

## *Trial Counsel*

For Appellant                Mr. Ronald Moody
                             204 N. 6th Street
                             Waco, Texas 76701

For Appellee                 Mr. Brandon Luce
                             Assistant District Attorney

                             Mr. Abelino "Abel" Reyna,
                             Criminal District Attorney,
                             McLennan County
                             219 N. Sixth Street, Suite 200
                             Waco, Texas 76701-1363

## *Appellate Counsel*

For Appellant                Mr. Charles W. McDonald
                             2024 Austin Avenue
                             Waco, Texas 76701

For Appellee                 Mr. Abelino "Abel" Reyna,
                             Criminal District Attorney,
                             McLennan County
                             219 N. 6th St., Ste. 200
                             Waco, Texas 76701

                             Mr. Sterling A. Harmon
                             Chief, Appellate Division

# TABLE OF CONTENTS

**Page(s)**

Identity of Parties and Counsel …………..………………..…    i

Table of Contents ……….…………………………………...    ii

Index of Authorities …….…..……………………………..    iv

Statement of the Case …..………….………………………    vi

Statement of the Facts ……..……………………………..    vi

Statement Regarding Oral Argument ………..……………    xvi

Issues Presented ………………………………………..    xvi

Issue No. 1: …………………………………………..

The trial court committed error by failing to properly instruct the jury on self-defense involving multiple assailants and committed error in its application of the law of self-defense as to multiple assailants in both counts in the first main charge of the court. This caused egregious harm to Appellant.

Summary of the Argument …………………………….….…    1

Argument ……..……………………………………….…….    2

Standard of Review   ….………………………………….....    2

Prayer   …..…………………………………………………    10

Certificate of Compliance   …....………………………….…    11

Certificate of Service   …....……….......………………………   11

# INDEX OF AUTHORITIES

| **Cases** | **Page(s)** |
| --- | --- |
| *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)…………………………………………………………………… | 2 |
| *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op'n on reh'g)……………………………………… | iv, 7 |
| *Brazelton v. State*, 947 S.W.2d 644, 646 (Tex. App. – Forth Worth 1997, no pet.) ………………………………… | 3 |
| *Brown v. State*, 651 S.W.2d 782-84, (Tex. Crim. App. 1983) …………………………………………………………… | 5 |
| *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999)…………………………………………………………………… | 7 |
| *Frank v. State*, 688 S.W.2d 825, 828 (Tex. App. – Houston [14th Dist.] 1998, pet. granted)………………….. | 4 |
| *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996) …………………………………………………………… | 3 |
| *Handy v. State*, 136 Tex. Crim. 208, 126 S.W.2d 30 (Tex. Crim. App. 1938) ………………………………………… | 4 |
| *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987) ……………………………………………………… | 3 |
| *Huizar v. State*, 12 S.W.3d 479, 484-85 (Tex. Crim. App. 2000) ……………………………………………………… | 7 |
| *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing *Almanza*, 686 S.W.2d at 172)……………… | 7 |
| *Hutch*, 922 S.W.2d at 171 (citing *Bailey v. State*, 867 | |

S.W.2d 42, 43 (Tex. Crim. App. 1993) (citing *Almanza*))     7

*Mata v. State*, 939 S.W.2d 719, 722 (Tex. Crim. App. – Waco 1997, no pet.) …………………………………………………     4

*McCuin v. State*, 505 S.W.2d 831 (Tex. Cr. App. 1974)     5

*Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991)(op. on reh'g pg 3) …………………………………………     3

*Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993)…………………………………………………………….     3

*Ngo v. State,* 175 SW. 3rd 738, 743 – 44 (Tex. Crim. App. 2005) …………………………………………………………     3

*Shafer v. State*, 919 S.W.2d 885, 887 n.1 (Tex. App. – Fort Worth 1996, pet. ref'd) …………………………………….     3, 4

*Warren v. State*, 565 S.W.2d 931, 933-34 (Tex. Crim. App. 1978) ……………………………………………………….     6

## **Rules**

Tex. R. App. Proc. 31 ………………………………………..     6

## STATEMENT OF THE CASE

This is a criminal case where Appellant was charged in a two count Indictment alleging aggravated assault with a deadly weapon against Anthony Scott (AS) in count one, and aggravated assault against Mark Cashaw (MC) in count two. Both of the primary counts are a violation of TEX. PENAL CODE 22.02 (WEST 2013) 1 CR at 5-6 By separate notice filed prior to trial, the State sought to enhance such charges by two prior felony convictions of Appellant to increase the punishment range upon conviction of the primary offense to 25-99 years or life. TEX. PENAL CODE 12.42(D)(WEST 2013) 1 CR at 34-35

After a jury trial, Appellant was found guilty on both counts. 4 RR at 53 Appellant elected to have the jury assess punishment. 1 CR at 24 In the presence of the jury, Appellant pled true to both enhancement allegations alleged by the State. 5 RR at 4-7 The jury, after receiving additional evidence and argument, sentenced Appellant to twenty five (25) years on each count with a deadly weapon finding. The sentence to run concurrently. 1 CR at 95-98 Notice of Appeal was filed. 1 CR at 100 After investigation, no motion for new trial was filed. 1 CR at 101 Hence, this appeal.

## STATEMENT OF THE FACTS

**Overview:**

This is a case is primarily about credibility and who the jury

believed. The State called the two complainants and a police officer during the guilt innocence phase. Appellant testified in his own behalf and called one fact witness. 1 R.R. at 6. **Both testified that there were multiple assailants.** There were no pretrial motions of consequence, few objections, the exhibits consisted mainly of maps, photos of injuries to the various parties, the knife and pen packets. There were two versions of the events that day.

**Appellant's and impartial witness version:**

On the night of the incident Appellant had taken his cat out and was standing behind his pickup drinking cup of coffee. He was also cleaning his finger nails with a knife he kept in the bed of the pickup. Appellant sees at least *four individuals* approaching him that he did not recognize initially. He later recognized MC during the assault by the individuals upon Appellant. It was dark in the area because the street lights were out. One of the *four assailants* said something to Appellant. *Three of them then approached him.* AS said something and then hit Appellant as MC comes back around and a *third guy* also came up. All of the assailants were

younger and larger than Appellant. AS was the most persistent assailant. Appellant uses knife in a slashing motion several times in self-defense against *multiple assailants*. He tried to retreat to his home of was pursued by *two or more of the assailants*. When he got to the door of his apartment he was kicked by AS and he defensively cut both AS and MC whom he saw with a knife. Melanie Loyd, a neighbor of Appellant's, was returning from work that evening and saw part of the incident. She saw *five* men, *three* black and possibly *two* white, walking toward Appellant. She sees one of them jump up and kick at Appellant. She then saw Appellant get off the ground. She attempted to talk to the police officer that evening but he didn't take her statement then or ever. She had seen Appellant stand by his pickup on other evenings and on this particular evening she saw him doing the same. Also she believed the other individuals (that approached Appellant) had been drinking that evening and assumed they were intoxicated.

Melanie Loyd testified that she had just gotten off work when she saw *five* guys walking through from the convenience store going towards Appellant's apartment. She then saw an

individual run toward Appellant and kick in the air to try and knock Appellant down. 3 R.R. at 160. She lives with her husband in an apartment about ten feet from Appellant's apartment. There were people everywhere and when the police arrived she offered to give her statement to them. They did not take her statement then or ever. 3 R.R. at 162. She believed that there were *three* black guys and *two* white guys. 3 R.R. at 171 She assumed they were intoxicated because they were also down there talking to the people who were having a birthday party. 3 R.R. at 182.

Appellant testified that he 63 years old, is 5 foot 7 1/2 inches and weighs about 186 pounds. 3 R.R. at 185 He knew MC but did not really know AS. 3 R.R. at 186 – 187. Appellant and AS had words a couple nights before about AS cussing at a 3-year-old child. 3 R.R. at 188 – 189. On the night of the incident Appellant had taken his cat out and was having a cup of coffee and cleaning his fingernails behind his pickup truck in front of his apartment. A *group of individuals* approached him that he did not first recognize. Later on he recognized MC. He knew there were *four* individuals. It was very dark because the street lights near there

were out. They stopped near him and made a comment. *Three* of them approached him and one stayed back a little bit. 3 R.R. at 190 – 193. All of this took place right at the back of his pickup truck. AS said something and swung at me and clipped my neck. Then MC came running around. *I slashed at the third guy that came up and I did make contact with him.* I go around the pickup to get into my home when I get kicked. He kept trying to kick me when somehow MC had gotten behind me. I saw knife in MC's hand. I had already cut AS and then I cut MC. MC then dropped his knife and went down. That is when AS took off also. Defendant's exhibits 2 through 5 were admitted showing Appellant's injuries from the attack. 3 R.R. at 193 – 195. Appellant was in fear for his personal safety as these were pretty good sized guys. MC had come up and the *third* guy also. 3 R.R. at 198 – 199. Appellant tried to get away when he got to the front door of his apartment. He got kicked straight in the kidney and it dropped him like a rock. 3 R.R. at 200 – 201. Appellant believed he would've been stabbed and was in danger of serious bodily injury or death. He had no alternative but to defend himself. 3 R.R.

at 203 – 204.  MC is 57 years old, six-foot tall and weighs 250 pounds.  AS is 5 foot 9 1/2 inches tall, weighs 215 pounds and is 54 years old. At the time I was being assaulted, I believed I needed to defend myself in any way that I could keep from being severely injured and because at that point in time there are also more people that hadn't left yet. 3 R.R. at 205 – 206.  In 1990 I was at Fort Bragg getting ready for Desert Storm. 3 R.R. at 209.

During cross-examination Appellant stated that when he was Mirandized he requested a lawyer. He states that is the reason for the discrepancies in the police reports because he told the policeman very little. 3 R.R. at 214 – 215. Appellant was questioned about the *four* or *five* people that he and Ms. Loyd saw that evening. 3 R.R. at 222, 224, 230.  Appellant was also questioned about how *they came at him like a flying "V" of ducks.* 3 R.R. at 225.  Appellant stated *"I'm the one that got jumped on. I'm the one that was confronted with four people larger than me"*. And just when that incident goes down where they are all in a position to jump on me in an instant.   You either react to the danger or you get ate up. I'm a former Marine. I'm former Army

special forces. You can't hesitate when your life is on the line. 3 R.R. at 236. I just defended myself. 3 R.R. at 240.

**The State and complainants' version:**

The complainants, Anthony Scott (AS) and Mark Cashaw (MC) on August 26, 2013, were returning from a convenience store and cut through another apartment complex and saw Appellant standing behind his pickup in front of his apartment. AS goes over to Appellant and there was apparently a verbal altercation between AS and Appellant. Appellant overreacts and cuts AS multiple times and MC in the back of the neck. The State suggests this is without provocation, justification or in self-defense. 3 R.R. at 7 – 10

MC says he and AS went to the store for lottery tickets. 2 R.R. 18. MC saw a knife in Appellant's hand. 2 R.R. at 24. MC described by Appellant when he turns his back on him. Appellant and AS were still fighting. 2 R.R. at 26 – 28. MC claims Appellant was swinging two knives. He sees Appellant moving toward AS and AS saying he's cutting me. 2 R.R. at 26-28. State's exhibits 3

and 4 are admitted showing MC had 7-8 stitches put in the next day (from the cut by Appellant). MC claims he still had numbness from the cut. He claimed he got along well with Appellant and saw him often, but that he never threatened Appellant that day or ever before. 2 R.R. at 31 – 32. MC was not with AS the night before but knew of some prior trouble between AS and Appellant. 2 R.R. at 37, 45. MC did not see AS kick Appellant or Appellant try to flee. 2 R.R. at 49 – 51.

AS testified that he lived at the apartments where MC was the manager in August of 2013. These apartments were near the apartment complex where Appellant lived. AS had known MC for 20 to 30 years. It was also brought out that AS had been convicted of two felonies eight days prior to the commencement of this trial. 3 R.R. at 63 – 67. AS says Appellant talked smart to him two days before the accident. 3 R.R. at 74 – 75. The day before the incident AS and Appellant had words between them, principally name-calling. On this occasion AS was by himself. 3 R.R. at 74 – 76. On the day of the incident, Appellant and AS had words again on the way back from the store where AS had been playing his lotto

numbers. This occurred while Appellant was at the back of his truck and AS could see his hands. 3 R.R. at 78 – 79. AS says "what's your f-ing problem?" to Appellant, then turns and walked away. Appellant then hit and stabbed AS. Appellant first hit AS and when AS turned Appellant stabbed him. 3 R.R. at 80 – 83. AS called out to MC (who at the time was several feet away) that Appellant had a knife. MC then came over and got cut and then AS realized he too was bleeding. AS sees Appellant and ran for it. 3 R.R. at 84 – 87. AS never threatened or planned with MC to gang up on Appellant. AS talked to the police officer prior to being taken to the hospital because of his cuts. 3 R.R. at 88 – 90 AS denied that he had a run in with Appellant because Appellant told him to leave a child alone the day before. 3 R.R. at 100 AS stated he got his hand cut when he was trying to grab the Appellant's arm to keep him from cutting him. 3 R.R. at 112 – 114 State's exhibit 5 – 9 show the cuts and injuries sustained by AS.

Joseph Melendez, a police officer got a 911 disturbance call in progress with a weapon. 3 R.R. at 119 When he arrived, Melendez says MC told him that the person in Apartment 1 B had

stabbed him (Appellant's apartment). 3 R.R. at 116    Melendez went to Appellant's apartment and Mirandized Appellant before questioning him. Appellant said he had cut two people but that it was in self-defense. Appellant said he felt threatened. The officer told him he could not use the weapon. Appellant admitted using the knife. Appellant showed Melendez were the knife was. 3 R.R. at 121 – 126.   The knife, State's exhibit 10, was admitted and shown to Melendez. He opened the knife and stated that the knife had dried blood and meat on it. 3 R.R. at 126 – 128.   Melendez stated that Appellant never mentioned anyone attacking him, kicking him or having any weapons. He had no visible injuries nor did he ask for any medical attention. 3 R.R. at 128 – 129 (but see Defense exhibits 2-5)    Melendez said Appellant only said it was self-defense because it was two against one in a fight. No weapons found on the other two. 3 R.R. at 130.   Melendez said there were no other witnesses that came forward that night. 3 R.R. 132.   He further stated that the knife that was used by Appellant was a deadly weapon that could kill or be used to kill someone. He also stated that the cut on AS could have been a life-threatening cut. 3

R.R. at 133-136. Melendez on cross stated that Appellant told him that two individuals were walking past him and that he got into an altercation with one of them and then felt threatened by the two males attacking him. Also that he was defending himself against this attack and that he believed it was self-defense. 3 R.R. at 138 – 143. He also stated fists could be deadly weapons. MC told Melendez he intervened and tried to break up the fight, he got cut but did not know it at the time. 3 R.R. at 149.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument because this is a somewhat novel area of the law and discourse between the court and counsel would aid in the outcome.

## ISSUES PRESENTED

1: The trial court committed error by failing to properly instruct the jury on self-defense involving multiple assailants and committed error in its application of the law of self-defense as to multiple assailants in both counts in the first main charge of the court. This caused egregious harm to Appellant.

## SUMMARY OF THE ARGUMENT

The court's first main charge to the jury was too restrictive and limited Appellant's right of self-defense to an unlawful attack or threatened attack, real or apparent, from Anthony Scott alone, in count 1 of the indictment, and to an unlawful attack or threatened attack, real or apparent, from Mark Cashaw alone, in count 2 of the indictment. Appellant was entitled to a charge that he had the right to defend himself against a hostile demonstration or threatened attack by Scott and Cashaw or either of them or by multiple assailants known or unknown in each count of the indictment. This error occurred in both the instruction and the application of the law to the facts paragraphs as to each count.

Although there was no objection to the charge, there was ample evidence produced by both Appellant and the only neutral witness of multiple assailants being present that night. The presence and participation of the multiple assailants was vigorously contested by both sides from opening statements until closing arguments. The jury sent back 6 notes during deliberations one of which indicated they were deadlocked. The result of these

Hodges, Michael Alan                    1

errors is egregious harm to Appellant as it altered or destroyed the very basis of his defense, namely, that he was attacked by multiple assailants that were bigger and younger. Appellant's defensive theory of self-defense was significantly affected by these errors and as a result denied Appellant a fair and impartial trial.

## ARGUMENT

Issue presented: The trial court committed error by failing to properly instruct the jury on self-defense involving multiple assailants and committed error in its application of the law of self-defense as to multiple assailants in both counts in the first main charge of the court. This caused egregious harm to Appellant.

## STANDARD OF REVIEW

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, the appellate court must determine whether error occurred. If the court finds error then, it must then evaluate whether sufficient harm resulted from the error to require

reversal. *Id* at 731 – 32.    Second, if trial counsel failed to object to the charge error appellant must show egregious harm to prevail on appeal. *Ngo v. State,* 175 SW. 3rd 738, 743 – 44 (Tex. Crim. App. 2005)

If a defendant produces evidence raising each element of a requested defensive instruction, he is entitled to the instruction regardless of the source and strength of the evidence.  *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996) (recognizing that "an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense).  *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991) (op. on reh'g); *Brazelton v. State*, 947 S.W.2d 644, 646 (Tex. App. – Forth Worth 1997, no pet.)  The credibility of the evidence presented regarding the defense is immaterial in determining whether the instruction is required.  *Muniz v. State,* 851 S.W.2d 238, 254 (Tex. Crim. App. 1993); *Miller*, 815 S.W.2d at 585; *Shafer v. State*, 919 S.W.2d 885, 887 n.1 (Tex. App. – Fort Worth 1996,

pet. ref'd)  A defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987); *Warren v. State*, 565 S.W.2d 931, 933-34 (Tex. Crim. App. 1978) We review the evidence offered in support of a defensive issue in the light most favorable to the defense.  *Shafer*, 919 S.W.2d at 887 n.1

A defendant is entitled to a charge on the right of self-defense against multiple assailants if there is evidence, viewed from the accused's standpoint that he was in danger of an unlawful attack or a threatened attack at the hands of more than on assailant. *Frank v. State*, 688 S.W.2d 825, 828 (Tex. App. – Houston [14th Dist.] 1998, pet. granted); *Mata v. State*, 939 S.W.2d 719, 722 (Tex. Crim. App. – Waco 1997, no pet.)

It has been held that when a defendant testifies that he was attacked by the complainant and other persons, he is entitled to an instruction on the right to defend himself against a joint attack, and it is reversible error to charge only on his right to defend himself against an attack by the complainant.  *Handy v. State*, 136 Tex. Crim. 208, 126 S.W.2d 30 (Tex. Crim. App. 1938)  Where there

is evidence that more than one person attacked the defendant, the charge is too restrictive if it confines the right of self-defense to the acts of the complainant. *McCuin v. State*, 505 S.W.2d 831 (Tex. Cr. App. 1974) Where the evidence that the defendant was in danger of unlawful attack at the hands of more than one assailant, the court should instruct the jury that he had the right to defend himself against *either* or *both* of them. *McCuin v. State, supra*, at 832. *Brown v. State*, 651 S.W.2d 782-84, (Tex. Crim. App. 1983)

Melanie Loyd, the only neutral witness, saw five guys going towards Appellant's apartment. She believed that there were three black guys and two white guys. She assumed they were intoxicated.

Appellant testified he was first approached by a group of individuals that he didn't recognize. Three of them approached him and one stayed back a little bit. After AS hit him, then MC came running around. *Appellant slashed at the third guy that came up and made contact with him*. Appellant was injured as demonstrated by Defense exhibits 2 through 5. Appellant was in fear for his personal safety because these were good sized guys.

These included the listed complainants *and the third guy*. At least one of them had a knife. He was worried about being stabbed and knew he was in danger of serious bodily injury or death. He believes this because of the number of assailants, their size and relative youth.

There is no question, based on the evidence and testimony adduced from Appellant and Mrs. Loyd, that Appellant was entitled to an instruction on multiple assailants to be put in the first main charge to the jury. It is also readily apparent that he was entitled to have the law on self-defense against multiple assailants properly applied to the facts of his case in both counts. These issues were amply raised and for the trial court not put them in the charge as suggested constituted error.

## Harm analysis

There were no objections to the charge. Normally the reviewing court will not review an unpreserved complaint. TEX. R. APP. PROC. 31. However, an unpreserved complaint about a charge error in a criminal case is an error which must be reviewed for

"egregious harm." *Huizar v. State*, 12 S.W.3d 479, 484-85 (Tex. Crim. App. 2000) (if the instruction is omitted, do an *Almanza* review); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op'n on reh'g). The harm suffered must be actual and not theoretical. *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999). Errors that result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing *Almanza*, 686 S.W.2d at 172). In deciding whether there is egregious harm, the reviewing court looks to (1) the charge itself, (2) the state of the evidence, including what issues were contested, and the weight of the probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Hutch*, 922 S.W.2d at 171 (citing *Bailey v. State*, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993) (citing *Almanza*)).

a)   <u>The charge itself</u>:

The first main charge of the court is set forth at 1 CR at 46 – 64. Both counts of the charge do not contain the necessary

multiple assailant language in either the instruction or the application paragraphs.

b) <u>The state of the evidence, including what issues were contested, and the weight of the probative evidence</u>:

The most hotly contested issues were how many assailants attacked Appellant, who attacked whom, the types of injuries suffered by the parties and of course self-defense. The discussion concerned multiple assailants, that AS and MC were part of a larger group, that this group were the aggressors, that Appellant was injured, and that one of the complainants was armed and the other kicked Appellant. This discussion began with the opening statements. 3 R.R. at 12. This continued throughout the trial. Multiple assailants, besides the complainants, were frequently brought up in either or both direct and cross-examination of every witness. The defense exhibits indicate Appellant was injured as does the testimony of the only neutral witness. This being the same witness that saw multiple assailants approach Appellant. The complainants' testimony is inconsistent. Counsel would suggest that the weight of the evidence favors Appellant and

definitely demonstrates significant harm. The complained of errors vitally affected Appellant's defense.

c) The arguments of counsel:

Multiple assailants were mentioned four times are more in the State's opening summation. 4 R.R. at 20, 21, 23, 24. Multiple assailants were mentioned by the defense in its summation at least 3 times. 4 R.R. at 30, 33 – 34. Multiple assailants were mentioned at least 4 times in the State's final summation along with the argument that Mrs. Loyd saw nothing. 4 R.R. at 38, 41, 42, 43. Appellant being attacked by multiple larger and younger assailants was the crux of Appellant's self-defense theory. Both the State and the defense spent a great deal of their respective arguments promoting or attacking this theory.

d) Any other relevant information revealed by the trial record as a whole:

The jury during deliberations sent back 6 notes that included a request for the rereading of MC's testimony, that they were deadlocked or hung in a request for the definition of a threat. 4 R.R. at 44, 50, 51 respectively. One or more jurors for quite some

time did not believe the complainants' version of events hence the deadlock. Counsel would also suggest that one or more jurors believed the threat of multiple assailants alone or at least believed Appellant's and Mrs. Loyd's version of events justified Appellant's actions. In conclusion counsel suggests that the complained of errors were actual not theoretical, caused egregious harm and this court should so hold.

## **PRAYER**

Appellant requests that the convictions in each count be reversed and the cause remanded for further proceedings, and accordingly, appellant so prays.

Respectfully submitted,

/s/ *Charles W. McDonald*
Charles W. McDonald
Texas Bar No. 13538800
2024 Austin Avenue
Waco, Texas 76701
Tel: (254) 752-9901
Fax: (254) 754-1466
Attorney for Appellant,

## Certificate of Compliance

The undersigned hereby certifies, pursuant to TEX. R. APP. PROC. 9.4(i)(3), that this computer-generated document contains <u>1870</u> words.

/s/ <u>*Charles W. McDonald*</u>
Charles W. McDonald

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of this brief was served electronically on the 15th day of August, 2016 to: counsel for the State, Sterling Harmon, <u>sterling.harmon@co.mclennan.tx.us</u>.

/s/ <u>*Charles W. McDonald*</u>
Charles W. McDonald